OPINION
{¶ 1} Defendant-Appellant Kevin Bradley appeals from his conviction and sentence on one count of Failure to Comply with the Order or Signal of a Police Officer, one count of Felonious Assault on a Police Officer, one count of Assault on a Police Officer, one count of Vandalism, four counts of Aggravated Trafficking in Drugs, five counts of Aggravated Possession of Drugs, one count of Illegal Assembly or Possession of Chemicals for the Manufacture of Illegal Drugs, and one count of Manufacture of Illegal Drugs.
 {¶ 2} Bradley contends that his motion to suppress should have been granted, because the police used excessive force in stopping him, and that counsel was ineffective for failing to make this claim. He maintains that the warrant used to search his truck was fraudulently obtained, and that the taped conversation between himself and his son was inadmissible. He points out that his right not to be tried in prison clothes was violated. He alleges that there was insufficient evidence to support one count of Illegal Manufacture of Drugs. Finally, Bradley insists that the trial court violated Blakely v. Washington (2004),542 U.S. 296, 124 S.Ct. 2531, in sentencing him to non-minimum, consecutive sentences, and that trial counsel was ineffective for failing to raise this issue in the trial court.
 {¶ 3} We conclude that Bradley's right to be tried wearing other than prison clothing was violated. Therefore, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings. Accordingly, Bradley's sentencing errors are moot. Nevertheless, we address the merits of Bradley's remaining claims, because they involve issues that may arise on retrial.
 {¶ 4} We conclude that the trial court properly overruled Bradley's motion to suppress and that, under the facts of this case, counsel was not ineffective for choosing not to argue that the police used excessive force in stopping Bradley. We conclude that the warrant to search Bradley's truck was properly obtained, and that the taped conversations between Bradley and his son were properly admitted into evidence. We conclude that there was sufficient evidence to support the contested count of Illegal Manufacture of Drugs.
 {¶ 5} Accordingly, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings consistent with this opinion.
 I {¶ 6} The Mechanicsburg Police Department had information that Bradley was involved in the illegal manufacture of methamphetamine. Officer Robert DeWitt, who knew that Bradley drove a red Nissan truck, was on routine patrol when he saw a red Nissan truck parked near a store on North Main Street. He called to have the license plate checked and found that the plate was not registered to Bradley, but that it also was not registered to a red Nissan truck. He was told that Bradley's driver's license had been suspended. Officer DeWitt parked across the street to see who came out to the truck.
 {¶ 7} Soon Officer DeWitt saw a man, whom he believed and later confirmed was Bradley, carrying items to the truck from a nearby apartment. When Bradley got into the truck and started to drive away, Officer DeWitt followed and soon saw Bradley fail to stop and narrowly miss hitting another vehicle. Officer DeWitt turned on his lights and siren. Bradley continued to drive, and Officer DeWitt saw him throw what appeared to be white powder out of the window. Soon after Bradley crashed into some utility pole wires, but was able to keep running from the police.
 {¶ 8} Off-duty Officer Scott Bodey joined the chase in his own vehicle, with a red light flashing. Bradley ran another stop sign and briefly drove through a field before returning to the road. Officer DeWitt decided to gently bump the truck's bumper with his cruiser. As he executed this "pit maneuver," he was close enough to positively identify Bradley, who briefly lost control of his truck and hit a utility pole, but then continued to drive through a field. When Officer DeWitt caught up with Bradley, the two made eye contact. Bradley then deliberately struck the cruiser with his truck, and the cruiser became stuck in the mud.
 {¶ 9} Bradley returned again to the road with Officer Bodey still following. Sheriff Deputy Chuck Arnold and Ohio Highway Patrol Trooper Steven Huck briefly joined the chase until they identified the driver, when they abandoned their pursuit pursuant to their department policies. Officer Bodey continued to pursue Bradley but briefly lost sight of him until a citizen informed him that a red truck had turned down a gravel lane. By this time Officer DeWitt had caught up with Bodey, and the two proceeded down the lane. The officers found Bradley's damaged truck abandoned in a field nearly two miles down the lane. The driver's side door was crunched from hitting Officer DeWitt's cruiser, and the passenger's door was open. In plain view on the passenger seat the officers saw eight bags of pills, which were later identified as Oxycodone and Methylphenidate, both Schedule II narcotics. The officers seized the pills and impounded the truck. They learned that Bradley had returned to Bellefontaine, where he was living with his girlfriend, Shauna Clemens.
 {¶ 10} At the home, Bradley's son, Drew, and several others saw that Bradley was covered in mud. Bradley put his clothes into a bag and asked his son to get rid of them. Later that night Bradley went to the Bellefountaine police to report that his truck was stolen while he was in Springfield with his son and a friend, Brad Donohoe. The Bellefountaine police took Bradley into custody on an outstanding warrant and advised the Mechanicsburg police that they had him in custody.
 {¶ 11} Officers DeWitt and Mike Gibson went to Bellefountaine to arrest Bradley for Fleeing and Alluding. When the officers learned of the alibi, they went to talk to Drew and Donohoe, both of whom stated that Bradley had not been with them that evening.
 {¶ 12} The following day, the Mechanicsburg police executed a search warrant on Bradley's home. They found a white pill like the ones that had been found in Bradley's truck. They also found blue Ziploc bags in a cereal box; the bags bore the same writing that was found on the blue Ziploc bags recovered from Bradley's truck. They recovered a couple of syringes containing Oxycodone. The officers also discovered a document containing telephone numbers and messages for Bradley and other residents at that address along with the words "Oxy" or "Perc," standing for Oxycodone and Percocet. The papers included prices and numbers of pills. Three of Bradley's fingerprints were found on the paper.
 {¶ 13} When Bradley's girlfriend, Clemens, visited him in jail, she was also taken into custody. At first, she denied knowing what was in the house, but when confronted with the evidence, she admitted that she knew that the pills were Bradley's and that he had been manufacturing methamphetamine. She even told the officers about the Champaign County garage where Bradley's lab was located. Mechanicsburg police, accompanied by Champaign County deputies, went to the garage, where they found an abundant amount of evidence: a tank hidden under a couch; punctured cans of starter fluid; batteries that had been unwound and from which the lithium had been removed; and hundreds of Sudafed wrappers, all evidence of methamphetamine manufacture. Officers also found orange residue associated with methamphetamine manufacturing on a dish and in a cooler identified as Bradley's.
 {¶ 14} One ingredient used in the manufacture of methamphetamine is anhydrous ammonia, which is often used by farmers. Mike Ryan of Champaign Landmark, a farmers' co-operative, testified that Bradley had been employed by the co-op, and that Bradley had experience with anhydrous ammonia.
 {¶ 15} Based upon all of this information, the police officers obtained a search warrant to search the rest of Bradley's truck. Therein, officers found a gas mask, bolt cutters, two pairs of coveralls, a leather coat, a camera with wires, a white bag with battery testers, and a blue freezer bag.
 {¶ 16} Bradley was initially indicted on one count of Failure to Comply with the Order or Signal of a Police Officer, one count of Felonious Assault on a Police Officer, one count of Assault on a Police Officer, and one count of Vandalism. The following month he was also indicted on four counts of Aggravated Trafficking in Drugs, six counts of Aggravated Possession of Drugs, one count of Illegal Assembly or Possession of Chemicals for the Manufacture of Illegal Drugs, and one count of Manufacture of Illegal Drugs. The sixteen counts were joined. Bradley filed a motion to suppress, which the trial court overruled. The charges were tried together before a jury. The jury found Bradley guilty of all but one count of Aggravated Possession of Drugs.
 {¶ 17} The trial court sentenced Bradley to an aggregate sentence of twenty-seven and one-half years. From his conviction and sentence, Bradley appeals.
 II {¶ 18} Bradley's Fifth Assignment of Error is as follows:
 {¶ 19} "APPELLANT BRADLEY WAS DEPRIVED OF HIS RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW UNDER THE FIFTH ANDFOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION WHEN THE TRIAL COURT COMPELLED MR. BRADLEY TO STAND TRIAL WHILE WEARING IDENTIFIABLE JAIL CLOTHING."
 {¶ 20} We begin with Bradley's Fifth Assignment of Error because it is dispositive of this appeal. Here Bradley points out that he was forced to attend the final two days of his trial in jail clothing, in violation of his constitutional rights. Because there was insufficient evidence that Bradley knowingly and intelligently waived his right to be tried in other than prison clothes, we sustain Bradley's Fifth Assignment of Error, and reverse his convictions.
 {¶ 21} "Central to the right to a fair trial, guaranteed by the Sixth and Fourteenth Amendments, is the principle that `one accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial.'" Holbrook v. Flynn (1986), 475 U.S. 560, 567,106 S.Ct. 1340, quoting Taylor v. Kentucky (1978), 436 U.S. 478, 485,98 S.Ct. 1930. For this reason, the United States Supreme Court has held that when a defendant is forced to appear before the jury in prison clothes, "the constant reminder of the accused's condition implicit in such distinctive, identifiable attire may affect a juror's judgment." Holbrook, supra, at 568, quoting Estelle v.Williams (1976), 425 U.S. 501, 504-5, 96 S.Ct. 1691.
 {¶ 22} We agree with the State that the right to appear in other than prison clothing may be waived. However, the waiver must be knowing and intelligent, and the waiver must be clearly and fully supported by the record. The record in this case is scant and incomplete. Simply put, the State failed to meet its burden of showing that the waiver was knowingly and intelligently made.
 {¶ 23} When Bradley showed up for the final days of his trial in prison clothes, the trial court made a cursory inquiry, on the record and under oath, of a deputy as to the reason for Bradley's attire. The deputy testified that Bradley refused to change because his regular clothes were dirty. Bradley briefly confirmed this assessment. There was no discussion about the extent to which the clothes were soiled, if they were, in fact, too soiled to be worn, or if there were other clothing alternatives available to Bradley.
 {¶ 24} Bradley was not informed that he had a choice of not attending the proceedings in his jail attire. For example, there was no evidence of an offer made for a brief delay in order to allow time for Bradley's attorney to obtain other clothing for him. To the contrary, the late night in court the day before, with Bradley having been incarcerated overnight in another county where he was being held on unrelated charges, suggested that Bradley may have been under the impression that he had no alternative to proceeding to trial in jail clothing.
 {¶ 25} Accordingly, the State failed to bear its burden of showing a knowing and intelligent waiver by Bradley of his right not to be tried in jail clothing. Absent a sufficient demonstration in the record of a knowing and intelligent waiver, we conclude that Bradley's Fifth Assignment of Error is well-taken.
 {¶ 26} Bradley's Fifth Assignment of Error is sustained.
 III {¶ 27} Bradley's First Assignment of Error is as follows:
 {¶ 28} "THE TRIAL COURT ERRED WHEN IT DENIED MR. BRADLEY' MOTION TO SUPPRESS THE WARRANTLESS SEARCH AND SEIZURE OF MR. BRADLEY'S TRUCK."
 {¶ 29} In his First Assignment of Error, Bradley claims that the trial court erred in refusing to suppress the evidence found in his abandoned truck, because the officers used excessive force in stopping him. We conclude that the trial court properly overruled Bradley's motion to suppress.
 {¶ 30} The following standard governs our review of a trial court's decision regarding a motion to suppress: "[W]e are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." State v. Retherford
(1994), 93 Ohio App.3d 586, 592, 639 N.E.2d 498.
 {¶ 31} It is significant in this case that the reason that the police officer had to use extraordinary means to stop Bradley's truck is that Bradley chose to ignore the officer's siren and lights, instead choosing to flee, leading the officer in a high-speed chase. Thus, it was Bradley's act of fleeing, not the actions of the officer, that resulted in the extraordinary means of stopping the truck. Accordingly, Bradley's first Assignment of Error is overruled.
 IV {¶ 32} Bradley's Second Assignment of Error is as follows:
 {¶ 33} "TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE AN ARGUMENT THAT WOULD HAVE COMPELLED THE SUPPRESSION OF THE EVIDENCE SEIZED FROM MR. BRADLEY'S TRUCK."
 {¶ 34} In his Second Assignment of Error, Bradley concludes that trial counsel was ineffective for electing not to argue that the officers used excessive force in stopping him. We disagree.
 {¶ 35} In order to prevail on a claim of ineffective assistance of counsel, the defendant must show both deficient performance and resulting prejudice. Strickland v. Washington
(1984), 466 U.S. 668, 104 S.Ct. 2052. To show deficiency, the defendant must show that counsel's representation fell below an objective standard of reasonableness. Id. Trial counsel is entitled to a strong presumption that his conduct falls within the wide range of effective assistance. Id. The adequacy of counsel's performance must be viewed in light of all of the circumstances surrounding the trial court proceedings. Id. Hindsight may not be allowed to distort the assessment of what was reasonable in light of counsel's perspective at the time.State v. Cook (1992), 65 Ohio St.3d 516, 524, 605 N.E.2d 70.
 {¶ 36} Even assuming that counsel's performance was ineffective, the defendant must still show that the error had an effect on the judgment. State v. Bradley (1989),42 Ohio St.3d 136, 142, 538 N.E.2d 373. Reversal is warranted only where the defendant demonstrates that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id.
 {¶ 37} As we note in Part III, above, Bradley's own actions, not those of the police, precipitated the car chase. The police did not use excessive force, and counsel had no obligation to make a vain argument to the contrary. After all, trial counsel is under no obligation to perform futile acts. State v. Flors
(1987), 38 Ohio App.3d 133, 139, 528 N.E.2d 950. Therefore, Bradley's second Assignment of Error is overruled.
 V {¶ 38} Bradley's Third Assignment of Error is as follows:
 {¶ 39} "THE EVIDENCE SEIZED UNDER WARRANT FROM MR. BRADLEY'S TRUCK SHOULD HAVE BEEN SUPPRESSED BECAUSE THE AFFIDAVIT SUPPORTING THE WARRANT WAS A LIE, AND TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO RENEW HIS MOTION TO SUPPRESS AFTER TESTIMONY AT TRIAL REVEALED THAT FACT."
 {¶ 40} Bradley next maintains that the trial court should have suppressed the evidence seized from his truck pursuant to the search warrant because the affidavit submitted in requesting the warrant contained false information, since the search had already been conducted. Moreover, he argues that his trial counsel was ineffective for not renewing the motion to suppress when this discrepancy was revealed at trial. We disagree.
 {¶ 41} "In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, `[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the `veracity' and `basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" State v. George
(1989), 45 Ohio St.3d 325, 544 N.E.2d 640, paragraph one of the syllabus, quoting Illinois v. Gates (1983), 462 U.S. 213,238-39, 103 S.Ct. 2317, followed. Reviewing courts must grant great deference to the magistrate's probable cause determination, resolving marginal cases in favor of upholding the warrant.George, supra, at paragraph two of the syllabus.
 {¶ 42} Bradley's whole argument centers on his claim that the information contained within the warrant was falsified and that the truck had already been searched before the warrant was issued. In support, Bradley points out that State's Exhibits 8 
11 have the date December 31, 2003, on them, while Officer Gibson identified the photos as taken when the truck was searched, but the warrant to search the truck was not issued until January 2, 2004.
 {¶ 43} The primary flaw in Bradley's argument is that photos taken of the outside of the truck were not necessarily taken when the truck was searched. As both photos show the damage on the truck, it is just as likely that the purpose of the photos was to document that damage. In fact, this probability is supported by the testimony of Police Chief Bostic, who stated that the photos showed the condition of the truck when it was impounded on December 30, 2003.
 {¶ 44} When all of the photos are reviewed, it is apparent that some have a date and time on the front while others do not. Officer DeWitt explained that the various photos were taken with two different cameras because the batteries in his camera died. Moreover, Officer Gibson testified without hesitation that, regardless of the dates on the photos, the truck was searched, not on the same day as the house, but on January 2, 2004, the day that the search warrant was issued for the truck. The dates on two photos of the outside of the truck are not enough evidence to require this court to conclude that the officers must have searched the truck before obtaining a search warrant. Furthermore, because the record reflects that counsel thoroughly questioned the officers regarding the timing of the issuance of the warrant and the search of the truck, we do not conclude that counsel was ineffective for choosing not to renew his motion to suppress.
 {¶ 45} Accordingly, Bradley's Third Assignment of Error is overruled.
 VI {¶ 46} Bradley's Fourth Assignment of Error is as follows:
 {¶ 47} "THE TRIAL COURT ERRED WHEN IT DENIED MR. BRADLEY'S MOTION TO DISALLOW INTO EVIDENCE THE RECORDED TELEPHONE EVIDENCE CONTAINED IN STATE'S EXHIBIT 151 OR, IN THE ALTERNATIVE, TO DECLARE A MISTRIAL."
 {¶ 48} Just days prior to trial Bradley made three telephone calls to his son from the jail. The calls were recorded, and a tape recording of those conversations was played at trial over the objection of the defense. In his Fourth Assignment of error, Bradley argues that the trial court erred in allowing that tape to be introduced into evidence. We conclude that the trial court did not abuse its discretion in allowing the tape into evidence.
 {¶ 49} Bradley first argues that the State failed to give timely notice of this evidence. However, it appears that the State only learned of the tape in the middle of the trial. The State notified the defense of the tape at the first break in the trial after learning of it. There is no evidence to support Bradley's conjecture that the State had knowledge of the tape at an earlier time.
 {¶ 50} Bradley next argues that the probative value of the evidence is far outweighed by its prejudicial impact. To the contrary, we find that once the listener wades through the numerous threats and extensive foul language, the probative value of this evidence is great and outweighs the prejudicial impact of the evidence. Rather than taking responsibility for his own decisions, Bradley repeatedly blamed his son for causing him to go to jail. Bradley's taped statements acknowledge that he was in the truck. They also identify the location of various items of methamphetamine manufacture as well as Bradley's ownership and use of those items. On the tape Bradley suggested how some items could be made to look like they had been placed by other people. Bradley also repeatedly demanded that his son answer various questions falsely and provide Bradley with an alibi. This evidence related directly to the facts of the case, but it also inferentially supported a finding of guilt, since it showed that Bradley was attempting to fabricate exculpatory evidence. We conclude that it was not unfairly prejudicial.
 {¶ 51} For these reasons, the trial court did not abuse its discretion in allowing the tape recording into evidence. Accordingly, Bradley's Fourth Assignment of Error is overruled.
 VII {¶ 52} Bradley's Sixth Assignment of Error is as follows:
 {¶ 53} "THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO SUSTAIN MR. BRADLEY'S CONVICTION FOR ILLEGAL MANUFACTURE OF DRUGS AS CONTAINED IN COUNT 16 OF HIS INDICTMENT."
 {¶ 54} Bradley next insists that there was insufficient evidence to support his conviction for Illegal Manufacture of Drugs under Count 16 of the indictment because the State failed to prove that the drugs were manufactured during the month of December, 2003. Because there was substantial circumstantial evidence to support this count of the indictment, we overrule Bradley's Sixth Assignment of Error.
 {¶ 55} A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or to sustain the verdict as a matter of law. State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus ofState v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
 {¶ 56} Bradley claims that the State failed to prove that he manufactured methamphetamine in December, 2003. Police searched the garage in late October, 2003, but found no evidence of methamphetamine manufacture. Bradley was incarcerated from that time until December 2, 2003. In late December, the police found the evidence of illegal drug manufacture in the garage: hundreds of Sudafed wrappers; unwound batteries; tank; punctured cans of starter fluid; and orange residue. Furthermore, the testimony of Drew and Shauna supported the inference that the drugs were manufactured in December. Thus, the State offered sufficient evidence to support a conviction for Illegal Manufacture of Drugs in December, 2003, as set forth in Count 16 of the indictment.
 {¶ 57} Bradley's Sixth Assignment of Error is overruled.
 VIII {¶ 58} Bradley's Seventh Assignment of Error is as follows:
 {¶ 59} "THE TRIAL COURT ERRED BY SENTENCING MR. BRADLEY BASED ON FACTS NOT FOUND BY THE JURY OR ADMITTED BY MR. BRADLEY."
 {¶ 60} Bradley's Eighth Assignment of Error is as follows:
 {¶ 61} "TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO MR. BRADLEY'S SENTENCE BECAUSE THE TRIAL COURT SENTENCED MR. BRADLEY BASED ON FACTS NOT FOUND BY THE JURY, OR ADMITTED BY MR. BRADLEY."
 {¶ 62} In his final two assignments of error, Bradley contends that the trial court violated Blakely v. Washington
(2004), 542 U.S. 296, 124 S.Ct. 2531, in sentencing him to non-minimum, consecutive sentences and that counsel was ineffective for failing to object to the sentence. However, because we are reversing Bradley's convictions, these assignments of error are moot and need not be addressed at this time. The Supreme Court of Ohio has two cases presently submitted to it for decision — State v. Foster, Licking App. No. 03CA95,2004-Ohio-4209, and State v. Quinones, Cuyahoga App. No. 83720,2004-Ohio-4485 — which will govern these issues in the event that Bradley is convicted on remand.
 IX {¶ 63} Bradley's Fifth Assignment of Error having been sustained, his Seventh and Eight assignments of error having been overruled as moot, and all his other assignments of error having been overruled on their merits, the judgment of the trial court is reversed, and this matter is remanded to the trial court for further proceedings consistent with this opinion.
Donovan and Young, JJ., concur.
(Hon. Frederick N. Young, Retired from the Court of Appeals, Second Appellate District, Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio)