OPINION
{¶ 1} Defendant-appellant Jessica McEldowney appeals from her conviction for driving with more than the proscribed amount of alcohol, as measured by a breath test. McEldowney pled no contest to the charge after the trial court denied her motion to *Page 2 
suppress evidence obtained during and after a traffic stop.
 {¶ 2} McEldowney contends that the trial court should have suppressed the evidence because the arresting officer failed to articulate reasonable suspicion for stopping her car. We conclude that the officer had both probable cause and reasonable suspicion for the stop. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 3} Ohio State Highway Patrol Trooper Richard Dixon was the arresting officer and was also the sole witness at the suppression hearing held in this case. According to Dixon, the Springfield, Ohio Highway Patrol post received a call in September 2006, from a Clark County Sheriff's deputy who was transporting a prisoner on Interstate 70 and was behind a driver who was possibly intoxicated. The deputy, George Bennett, reported that the driver was operating the vehicle erratically. Bennett remained behind the vehicle, following it, until Dixon arrived. Bennett then moved over and Dixon began following the vehicle, which was a maroon Ford. Dixon observed the Ford traveling in the right lane, weaving back and forth. Dixon saw the Ford cross the solid white right edge line a few times, by a "pretty good distance." At least once, the distance was between fifteen and eighteen inches. Dixon also witnessed several other vehicles that were staying back to avoid the Ford. Dixon then performed a stop.
 {¶ 4} Upon approaching the vehicle, Dixon could immediately smell the strong odor of an alcoholic beverage, and observed that the driver (later identified as McEldowney) had red, glassy, bloodshot eyes. Dixon asked McEldowney how much *Page 3 
she had to drink and she said that she had a few drinks. McEldowney said she was coming from a wedding and was heading back to Ohio State University. The time was around 1:26 a.m.
 {¶ 5} Dixon administered the Horizontal Gaze Nystagmus test and a walk-and-turn test. McEldowney displayed six out of the six clues possible on the HGN test, and seven out of eight clues on the walk-and-turn test. Based on his observations and training, Dixon concluded that McEldowney had consumed enough alcohol to place her over the legal limit. Dixon administered Miranda warnings, handcuffed McEldowney, and took her back to the Highway Patrol post, where she consented to a breath test. The test indicated that McEldowney's alcohol content was 0.140 percent, well over the legal limit.
 {¶ 6} McEldowney was charged with one count of driving while intoxicated, one count of driving with over the proscribed amount of alcohol as measured by a breath test, and one count of not staying within marked lanes. Following a suppression hearing, the trial court found that the traffic stop was based on a reasonable and articulable suspicion that McEldowney had violated Ohio's traffic laws. The court also found that Dixon had reasonable, articulable suspicion to detain McEldowney for field sobriety tests, and probable cause, based on the tests, to arrest McEldowney for driving while intoxicated.
 {¶ 7} After the court denied the suppression motion, McEldowney pled no contest to driving with over the proscribed amount of alcohol as measured by a breath test. McEldowney was sentenced to a $250 fine and ten days in jail, of which seven *Page 4 
were suspended and three days were to be credited for completion of a weekend intervention program. McEldowney's driver's license was also suspended for one year. From this adverse judgment, McEldowney appeals.
 II {¶ 8} McEldowney's sole assignment of error is as follows:
 {¶ 9} "THE TRIAL COURT SHOULD HAVE ORDERED THE EVIDENCE SUPPRESSED BECAUSE AT THE SUPPRESSION HEARING THE OFFICER FAILED TO ARTICULATE A REASONABLE SUSPICION FOR STOPPING APPELLANT'S CAR."
 {¶ 10} Under this assignment of error, McEldowney contends that Trooper Dixon lacked a reasonable suspicion to stop her car because Dixon's testimony did not establish a statutory violation of R.C.4511.33(A). McEldowney urges us to follow State v. Phillips, Logan App. No. 8-04-25, 2006-Ohio-6338, which held that R.C. 4511.33(A) imposes a two-prong test. This test requires an officer "to witness (1) a motorist not driving his or her vehicle within a single lane or line or travel as nearly as is practicable; and (2) a motorist not first ascertaining that it is safe to move out of that lane or line or travel before doing so, in order to have probable cause to constitutionally stop the motorist." Id. at ¶ 65 (emphasis in original).
 {¶ 11} In the present case, the trial court held that the traffic stop was justified because Dixon had a reasonable and articulable suspicion that McEldowney had violated Ohio's traffic laws. In particular, the court relied on the fact that Dixon observed *Page 5 
McEldowney's vehicle cross over the white line on the right edge of Interstate 70 on two occasions. The court also noted in its findings of fact that Dixon had received a report that an auto was being driven erratically, and that Dixon began following the vehicle. Dixon then noticed that the vehicle crossed over the right edge line twice, and that other vehicles following the vehicle were afraid to pass.
 {¶ 12} "The following standard governs our review of a trial court's decision regarding a motion to suppress: `[W]e are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard.'" State v.Bradley, Champaign App. No. 2004-CA-15, 2005-Ohio-6533, at ¶ 30, quoting from State v. Retherford (1994), 93 Ohio App.3d 586, 592,639 N.E.2d 498.
 {¶ 13} The trial court's findings of fact are supported by competent, credible evidence. Dixon was the only witness at the suppression hearing, and his account of events was straightforward and generally unchallenged. The trial court's conclusion that Dixon had a reasonable and articulable suspicion for the stop is also consistent with the law in our district. See, e.g., State v. Schwieterman, Darke App. No. 1588, 2003-Ohio-615, at ¶ 9-12; State v. Donovan, Clark App. No. 02CA0052, 2003-Ohio-1045, at ¶ 19-20; and State v. Yslas, Miami App. No. 05CA43,2007-Ohio-5646, at ¶ 27 (evidence of defendant's marked lane violation establishes reasonable suspicion or probable cause for a stop).
 {¶ 14} R.C. 4511.33(A) governs marked lane violations, and provides that: *Page 6 
 {¶ 15} "Whenever any roadway has been divided into two or more clearly marked lanes for traffic, or wherever within municipal corporations traffic is lawfully moving in two or more substantially continuous lines in the same direction, the following rules apply:
 {¶ 16} "(1) A vehicle or trackless trolley shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety."
 {¶ 17} In Schwieterman, a state trooper saw the defendant weave within his lane and cross the right edge line three times over the course of a mile. On one occasion, the defendant's tire crossed the edge line by about one foot. 2003-Ohio-615, at ¶ 3. We found that the trooper had reasonable grounds to stop and further investigate based on the fact that the defendant may have committed a traffic violation. Id. at ¶ 13. We stated that "[i]ndeed, absent any readily apparent cause for a motorist to have strayed from his lane of travel, a police officer reasonably may infer that it was practicable for the motorist to have stayed in his lane." Id.
 {¶ 18} In Schwieterman, we also rejected the argument that a de minimis traffic violation fails to justify a traffic stop. Id. at ¶ 9, citing Whren v. United States (1996), 517 U.S. 806, 116 S.Ct. 1769,135 L.Ed.2d 89, and Dayton v. Erickson, 76 Ohio St.3d 3, 11-12,1996-Ohio-431, 665 N.E.2d 1091. In this regard, we stressed inSchwieterman that the Ohio Supreme Court had reversed a decision of the Twelfth District Court of Appeals in a case involving very similar facts. In that case, which was State v. Wilhelm, the Twelfth District concluded that a police officer was not justified in making a traffic stop *Page 7 
for a violation of R.C. 4511.33, because the statute required the driver only to stay within a single lane "`as nearly as is practicable.'"Schwieterman, 2003-Ohio-615, at ¶ 10, referring to State v.Wilhelm, 81 Ohio St.3d 444, 1998-Ohio-613, 692 N.E.2d 181. Therefore, the Twelfth District reasoned that minor deviations would not justify a traffic stop for violating R.C. 4511.33. Based on the Supreme Court's reversal of the Twelfth District, we found the reasoning about minor deviations unpersuasive. We noted that:
 {¶ 19} "Ohio's `marked lanes' statute requires a driver to remain in a single lane `as nearly as is practicable.' In this context, the word `practicable' means `performable, feasible or possible.' State v.Hodge, 147 Ohio App.3d 550, 2002-Ohio-3053. As the Seventh District explained in Hodge:
 {¶ 20} "`The legislature did not intend for a motorist to be punished when road debris or a parked vehicle makes it necessary to travel outside the lane. Nor, we are quite certain, did the legislature intend this statute to punish motorists for traveling outside their lane to avoid striking a child or animal. We are equally certain that the legislature did not intend to give motorists the option of staying within their lane at their choosing. Common sense dictates that the statute is designed to keep travelers, both in vehicles and pedestrians, safe. The logical conclusion is that the legislature intended only special circumstances to be valid reasons to leave a lane, not mere inattentiveness or carelessness. To believe that the statute was intended to allow motorists the option of when they will or will not abide by the lane requirement is simply not reasonable.'"Schwieterman, 2003-Ohio-615, at ¶ 11-12.
 {¶ 21} A few years later, the Third District Court of Appeals issuedPhillips, which *Page 8 
affirmed a trial court decision granting a defendant's motion to suppress. 2006-Ohio-6338, at ¶ 1. Unlike the present case, the defendant in Phillips was not charged with violating R.C. 4511.33, and there was no discussion of this statute in the trial court. The matter was also not raised on appeal, either in the briefs or at oral argument. Id. at ¶ 84 (Bryant, P.J., concurring separately).
 {¶ 22} Instead, the defendant in Phillips was charged with violating R.C. 4511.22, by failing to obey a traffic control device. Id. at ¶ 3 and 21. Although the arresting officer had testified that the defendant's vehicle crossed over the white right edge line three times, the trial court found no evidence of erratic driving or alleged lane violations on a videotape that was taken. Id. at ¶ 7-12. The trial court also followed cases holding that "de minimus [sic] lane violations do not establish reasonable suspicion for a traffic stop in the absence of other evidence suggesting impairment." Id. at ¶ 12, citing State v.Gullett (1992), 78 Ohio App.3d 138, 604 N.E.2d 176.
 {¶ 23} On the State's appeal from the suppression decision, the Third District concluded that white right edge lines fall within the statutory definition of traffic control devices. After referring to the Ohio Manual of Uniform Traffic Control Devices and various statutes, the Third District found that a straight white edge line provides "guidance about the roadway and does not provide any instructions." Id. at ¶ 32. The Third District, therefore, concluded that motorists do not disobey instructions of a traffic control device by crossing these lines and that probable cause cannot be based on a violation of R.C. 4511.22(A). Id. at ¶ 33.
 {¶ 24} Despite the fact that neither side had raised the matter, the Third District *Page 9 
went on to consider whether probable cause or a reasonable, articulable suspicion can be based on a violation of R.C. 4511.33(A). The Third District noted that two different interpretations of R.C.4511.33(A)(1) exist in Ohio. One interpretation is that a violation requires "both that the driver stay within his or her lane or line of traffic and that the driver's movement between lanes or lines of traffic is not safe or is not made safely." Id. at ¶ 41 (emphasis in the original).
 {¶ 25} Under the second interpretation, that there are two separate requirements: "First, operators of vehicles must drive within a single lane or line of traffic as nearly as practicable. Second, operators of vehicles may not move from a lane or line of traffic until the operator has determined that it can be done with safety. This second interpretation concludes that not satisfying either requirement is a violation of the statute." Id. at ¶ 43.
 {¶ 26} The Third District cited a number of cases that follow the second interpretation, including State v. Hodge. Id. at ¶ 43.Hodge is a case that we specifically relied on in Schwieterman. SeeSchwieterman, 2003-Ohio-615, at ¶ 11-12.
 {¶ 27} The Third District also discussed the Ohio Supreme Court decision in Wilhelm. In contrast to our holding inSchwieterman, the Third District concluded that the Supreme Court failed to provide any guidance in Wilhelm, other than "summarily overruling" the lower court decision. Id. at ¶ 48. In the absence of appropriate guidance, the Third District found that it was free to adopt its own interpretation of R.C. 4511.33(A), and chose the first interpretation, which requires satisfaction of both prongs of the statute. Id. at ¶ 49-51. *Page 10 
 {¶ 28} The Third District acknowledged that after Hodge, "Ohio courts have consistently determined that any crossing of the right white edge line provides probable cause that a violation of R.C. 4511.33(A) has occurred." Id. at 63. The Third District even included itself among the districts that had agreed, in dicta, with Hodge, and had recognized under Whren and Erickson "that any de minimis violation is a violation of law." Id. at 64. In this regard, however, the Third District stressed that:
 {¶ 29} "[W]hile we stand behind our decisions which have held that any violation of a traffic law, including de minim is traffic violations, give police officers the ability to make a constitutional stop of a motorist, we move away from our decisions which have held that any touching or crossing of a right white edge line, regardless of how major or minor, on its own, is a violation of law per se. In doing so, we adopt the two-pronged interpretation of R.C. 4511.33(A), which requires a police officer to witness (1) a motorist not driving his or her vehicle within a single lane or line of travel as nearly as is practicable; and (2) a motorist not first ascertaining that it is safe to move out of that lane or line of travel before doing so, in order to have probable cause to constitutionally stop the motorist. While we recognize that this standard might be burdensome for both police officers and prosecutors, we believe that the Legislature did not intend for motorists to be `perfect' drivers, but rather `reasonable' drivers."Phillips, 2006-Ohio-6338, at ¶ 65.
 {¶ 30} Upon applying this test to the case at hand, the Third District concluded that the defendant's line crossing was not a violation of law because there was no evidence of either how far or how long the vehicle was over the line. There was also no *Page 11 
evidence about whether additional traffic existed on the roadway or whether the defendant had crossed the line without ascertaining if he could do so safely. Furthermore, a review of the officer's videotape showed no evidence of traffic traveling in either direction. Id at ]} 74. Based on these facts, the Third District found a lack of probable cause for the stop. Id.
 {¶ 31} The Third District then went on to consider whether the defendant's actions gave rise to a reasonable, articulable suspicion sufficient to justify a stop. However, the Third District rejected this ground also, finding that the officer did not point to any specific and articulable facts that would warrant an investigatory stop.
 {¶ 32} Upon review, we decline the invitation to followPhillips. We begin by noting that the impact of Phillips in the Third District is unclear because Phillips has not been cited since it was decided. More importantly, only the author of the lead opinion appears to have definitively agreed on the conclusions made about R.C. 4511.33. The second judge on the panel concurred in the judgment only, which indicates that he did not necessarily agree with the analysis in the lead opinion, and agreed only as to the result. The third judge on the panel wrote a separate concurring opinion, in which he specifically stated that he did not agree with "the lead opinion's analysis concerning violations of R.C. 4511.33(A), driving within the marked lanes." 2006-Ohio-6338, at]} 84 (Bryant, concurring separately). Judge Bryant stated, however, that he would affirm the trial court's judgment as entered because he agreed with the trial court's factual findings. These findings indicated that the officer lacked reasonable suspicion for the stop in the absence of other evidence of impairment beyond driving on the white line. *Page 12 
 {¶ 33} As an additional matter, we note that the Ohio Supreme Court has accepted a conflict that was certified between Phillips and a decision of the Fifth District Court of Appeals in State v. Mays, Licking App. No. 2006-CA-00097, 2007-Ohio-2807. See State v. Mays,114 Ohio St.3d 1506, 2007-Ohio-4285, 72 N.E.2d 949 (Table) (accepting a certified conflict and stating the question that was certified).
 {¶ 34} In Mays, the Fifth District followed existing authority, which held that "any traffic violation, even a de minimis violation, would form a sufficient basis upon which to stop a vehicle." 2007-Ohio-3807, at ¶ 12. The Fifth District also agreed with the analysis inHodge. Id. at ¶ 16. Finally, the Fifth District held that the police officer had a reasonable and articulable suspicion under the totality of the circumstances. In this regard, the Fifth District pointed out that:
 {¶ 35} "While a defendant may argue that there were reasons for which he or she should not have been convicted of a violation of R.C.4511.33(A), an officer is not required to have proof beyond a reasonable doubt that someone has violated the marked lane statute in order to make a traffic stop nor must an officer eliminate all possible innocent explanations for someone going over the edge lines. * * * The officer need only have a reasonable suspicion based upon articulable facts that the driver violated the marked lanes statute." Id. at ¶ 20 (citations omitted).
 {¶ 36} We agree with this statement. See, e.g., State v. Terry (July 14, 2000), Montgomery App. No. 18166, 2000 WL 966566, *3 (noting, in case involving a stop for a tinted window violation after which crack cocaine was found, that the issue in the suppression hearing was not whether the defendant's windows were, in fact, too darkly *Page 13 
tinted. Instead, the issue was whether the officer, based on his observation, had "a reasonable and articulable suspicion that the windows were overly tinted." The officer was not required, "as a predicate for effecting the stop, to conclude beyond reasonable doubt, that * * * [the defendant's] windows were overly tinted.")
 {¶ 37} The question certified by the Ohio Supreme Court inMays is: "May a police officer who witnesses a motorist cross a right white edge line and without any further evidence of erratic driving or that the crossing was done in an unsafe manner make a constitutional stop of the motorist?" Mays, 114 Ohio St.3d 1506, 2007-Ohio-4285,72 N.E.2d 949 (Table). The Ohio Supreme Court's answer to this question may have been foreshadowed in State v. Batchili, 113 Ohio St.3d 403,2007-Ohio-2204, 865 N.E.2d 1282. Batchili involved a marked lane violation under R.C. 4511.33(A). In this regard, the Ohio Supreme Court commented that the "legality of the traffic stop is not disputed. The officers' suppression-hearing testimony that Batchili was pulled over for a marked-lane violation is uncontroverted and served as the lawful basis for the stop." 2007-Ohio-2204, at ¶ 8. Although Batchili involved a center-lane marker violation rather than a right edge violation, the Ohio Supreme Court's comment is quite unequivocal, especially since the car drifted over the lane marker only once, and only by the width of a tire. The arresting officer also did not apparently testify about other traffic in the area. Id. at ¶ 25-26 (Pfeifer, dissenting).
 {¶ 38} In light of the above discussion, we will continue to follow existing authority in our district, which holds that evidence of a defendant's marked lane violation establishes reasonable suspicion or probable cause for a traffic stop. See *Page 14 Schwieterman, 2003-Ohio-615, at]} 9-12; Donovan, 2003-Ohio-1045, atTf 19-20; and Yslas, 2007-Ohio-5646, at ]} 27.
 {¶ 39} The trial court in the present case concluded that Trooper Dixon had a reasonable and articulable suspicion that McEldowney had violated Ohio's traffic laws. We agree with the trial court, even though the court should have first considered whether probable cause existed. See Dayton v. Erickson, 76 Ohio St.3d at 11, and Bowling Green v.Godwin, 110 Ohio St.3d 58, 61-62, 2006-Ohio-3563, 850 N.E.2d 698, at If 13 (noting that procedurally, a court determines the issue of probable cause first, and then if that inquiry does not suffice, the court moves on to the issue of whether the officer had a reasonable suspicion to support the stop.) However, the error, if any, was harmless, because both probable cause and a reasonable, articulable suspicion existed.
 {¶ 40} In Godwin, the Ohio Supreme Court observed that:
 {¶ 41} "Probable cause is determined by examining the historical facts, i.e., the events leading up to a stop or search, `viewed from the standpoint of an objectively reasonable police officer.' Ornelas v.United States (1996), 517 U.S. 690, 696, 116 S.Ct. 1657,134 L.Ed.2d 911. Determination of probable cause that a traffic offense has been committed, `"`like all probable cause determinations, is fact-dependent and will turn on what the officer knew at the time he made thestop.'"' (Emphasis sic.) Erickson, 76 Ohio St.3d at 10, 665 N.E.2d 1091, quoting United States v. Ferguson (C.A.6, 1993), 8 F.3d 385, 391. Thus, the question whether a traffic stop violates the Fourth Amendment to the United States Constitution requires an objective assessment of a police officer's actions in light of the facts and circumstances."2006-Ohio-3563, at ]} *Page 15 
14.
 {¶ 42} When Trooper Dixon made the stop, he was aware that he had been called to the location by another police officer who had seen McEldowney driving erratically on the interstate highway. Dixon then followed McEldowney and made his own observations. In addition to seeing the car weave and cross over the right edge line on two occasions, once by well over a foot, Dixon noted that other cars were hanging back and were hesitant to pass McEldowney's vehicle. Although the lane violation was sufficient, the remaining circumstances would also have allowed an objectively reasonable officer to find probable cause for the stop. We note that Dixon's testimony would have sufficed even underPhillips' two-prong approach, since he witnessed McEldowney driving outside her lane, and also witnessed her doing so under circumstances indicating that her movement could present a danger to other vehicles.2007-Ohio-6338, at ¶ 65.
 {¶ 43} The stop in the present case was also constitutionally valid because Dixon had a reasonable, articulable suspicion of criminal activity. After finding in Phillips that the defendant's action of crossing the right white edge line did not give the officer probable cause for the stop, the Third District went on to consider whether the officer had a reasonable, articulable suspicion that criminal activity was afoot. Phillips, 2006-Ohio-6338, at ¶ 76-79. The Third District rejected this theory, also, because there was no evidence that the vehicle's movement or the driving patterns gave the officer a suspicion that the driver was either tired or intoxicated. Id. at ¶ 79. In contrast, the record in the present case contains ample evidence to support Dixon's suspicion that *Page 16 
McEldowney was intoxicated. As we said, Dixon was called to the scene by another officer who expressed suspicion that the driver was intoxicated, and Dixon's own observations verified this suspicion.
 {¶ 44} Because the motion to suppress was properly granted, McEldowney's single assignment of error is overruled.
 III {¶ 45} McEldowney's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
BROGAN, J., concurs.