[Cite as *State v. Wynn*, 2014-Ohio-5809.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO

      Plaintiff-Appellee

v.

KENNETH L. WYNN

      Defendant-Appellant

Appellate Case No.    26237

Trial Court Case No.   2013-CR-467

(Criminal Appeal from
 Common Pleas Court)

. . . . . . . . . . .

O P I N I O N

Rendered on the 31st day of December, 2014.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

DANIEL J. O'BRIEN, Atty. Reg. #0031461, 1210 Talbott Tower, 131 North Ludlow Street, Dayton, Ohio 45402
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1}   Defendant-appellant, Kenneth Wynn, appeals from the decision of the Montgomery County Court of Common Pleas overruling his motion to suppress heroin that was discovered by police in plain view during a traffic stop of his rental vehicle.  For the reasons outlined below, the judgment of the trial court will be affirmed.

{¶ 2}   On March 22, 2013, Wynn was indicted on one count of possession of heroin in an amount greater than or equal to 10 grams, but less than 50 grams, in violation of R.C. 2925.11(A), a felony of the second degree. The charge arose from the police discovering a baggie of heroin in Wynn's rental vehicle during a traffic stop on February 8, 2013.   Wynn initially pled not guilty to the charge and thereafter filed a motion to suppress all evidence obtained during the traffic stop.   In the motion, Wynn argued, in part, that the police lacked probable cause to conduct the traffic stop.

{¶ 3}   Due to scheduling conflicts, a hearing on the motion to suppress was held over the course of three days, and ultimately concluded on November 8, 2013.  At the hearing, Officer Dustin Phillips of the Dayton Police Department testified that on February 8, 2013, he was assigned to the Community Initiative to Reduce Gun Violence ("CIRGV"), a specialized division within the Dayton Police Department's drug unit that is focused on high-crime areas. Phillips explained that CIRGV was working in conjunction with the Federal Bureau of Investigation ("F.B.I."), to investigate a number of shootings that had taken place in the Westwood neighborhood near Gettysburg Avenue in Dayton, Ohio.

{¶ 4}   Specifically, Phillips testified that as he was patrolling that area, an F.B.I. agent

requested assistance with completing a traffic stop. According to Phillips, the F.B.I. agent advised over the radio that he had observed a black Chevy Impala with Maryland license plates commit a traffic violation. Phillips testified that he found the Impala in the area of 2536 North Gettysburg Avenue and conducted the traffic stop after confirming over the radio that the F.B.I. agent had probable cause for the stop. After conducting the stop, Phillips learned that the driver had failed to signal before changing lanes.

{¶ 5} During the traffic stop, Phillips testified that he observed the driver's head and shoulders lean toward the middle console and passenger side of the vehicle for a short period of time and then sit back up as the driver slowed down and pulled to the curb. This movement concerned Phillips, as he testified from his experience such movements were consistent with drivers concealing or retrieving weapons. Once the driver stopped, Phillips testified that he approached the vehicle and observed the driver's-side window was already down. Upon getting directly next to the driver's-side window, Phillips testified that he smelled "an extremely strong odor of burnt marijuana" coming from inside the vehicle. Trans. (Oct. 24, 2013), p. 59. Thereafter, Phillips testified that he ordered the driver, later identified as Wynn, out of the vehicle, and that Wynn complied.

{¶ 6} Continuing, Phillips testified that once Wynn was out of the vehicle, he ordered him to turn around and face the vehicle so that he could perform a pat-down search to ensure Wynn had no weapons. However, prior to starting the pat-down, Phillips testified that he looked down at the driver's-side door that was left open by Wynn and saw a clear sandwich baggie containing a substance that he immediately recognized as heroin located in the pocket of the inside door handle. Phillips testified that he has been a police officer for six years, has interacted

with heroin, and is familiar with its appearance, which Phillips described as a brown to tan chunky material.

{¶ 7}   After seeing the heroin, Phillips testified that instead of proceeding with the pat-down search, he immediately placed Wynn in handcuffs, retrieved the drugs for safekeeping, searched Wynn to make sure he did not have any weapons on him, and then placed him in the back of his police cruiser. The substance was then field tested at the scene and was positively identified as heroin.  Phillips's cruiser camera recorded the entire traffic stop and the video was admitted into evidence as "Joint Exhibit No. I."

{¶ 8}   In addition to Phillips, the State presented testimony from Special Agent Timothy Ferguson of the F.B.I.  Ferguson testified that on February 8, 2013, he was assigned to the F.B.I.'s Safe Streets Task Force and was conducting direct patrols of high-crime areas in conjunction with CIRGV.   On the day in question, Ferguson was conducting a surveillance of a location near James H. McGee Boulevard nicknamed "The Coast," which Ferguson testified is an area associated with violent crime and high-narcotics trafficking.   During his surveillance, Ferguson noticed a black Chevy Impala parked in the area and decided to follow the vehicle. According to Ferguson, the Impala drew his attention because it had Maryland license plates.

{¶ 9}   Thereafter, Ferguson testified that he observed the driver of the Impala make a lane change without signaling near Gettysburg Avenue.  As a result of this violation, Ferguson, who was not in uniform or traveling in a cruiser, testified that he got on the radio and requested assistance from a marked uniform cruiser to conduct a traffic stop.  Ferguson testified that he observed a marked cruiser drive past him and pull the Impala over, but that he did not stay for the duration of the traffic stop.  Ferguson also confirmed that the vehicle he was driving had no

camera and that there was no recording of the signaling violation that was the basis of the stop.

{¶ 10} After hearing all the testimony offered by the State and reviewing the video evidence, the trial court overruled Wynn's motion to suppress. Specifically, the trial court held that the traffic stop was lawful, there was probable cause to remove Wynn from his vehicle due to Phillips detecting a strong odor of marijuana, and Wynn's removal resulted in Phillips lawfully discovering the heroin in plain view. Following this decision, on March 13, 2014, Wynn pled no contest to possession of heroin and the trial court found him guilty. The trial court then sentenced Wynn to a two-year prison term and a two-year suspension of his driver's license.

{¶ 11} Wynn now appeals from the trial court's decision overruling his motion to suppress, raising one assignment of error for review. Wynn's sole assignment of error is as follows:

THE TRIAL COURT PREJUDICIALLY ERRED IN OVERRULING DEFENDANT'S MOTION TO SUPPRESS AS "JOINT EXHIBIT #1" SHOWED AT EVERY POINT THAT THE POLICE['S] ORALLY SWORN VERSION OF THESE EVENTS, UPON WHICH THE TRIAL COURT SOLELY BASED ITS DECISION, WAS FALSE AND TOTALLY INCONSISTENT WITH THE ACTUAL REAL-TIME TAPE RECORDING OF THESE EVENTS FROM OFFICER PHILLIPS' OWN VIDEO CAM.

{¶ 12} Under his sole assignment of error, Wynn generally contends the police lacked probable cause to stop and search the rental vehicle he was driving. Specifically, Wynn claims the video of the traffic stop taken from Phillips's cruiser camera is inconsistent with Phillips's testimony regarding his observations and interactions with Wynn during the traffic stop, thereby

warranting a reversal of the trial court's decision overruling his motion to suppress. In addition, Wynn also implies that a reversal is warranted based on the pretextual nature of the stop and based on the fact that Phillips was not the officer who observed the traffic violation.

{¶ 13} When ruling on a motion to suppress, " 'the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses.' " *State v. Hopfer*, 112 Ohio App.3d 521, 548, 679 N.E.2d 321 (2d Dist.1996), quoting *State v. Venham*, 96 Ohio App.3d 649, 653, 645 N.E.2d 831 (4th Dist.1994). The court of appeals must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. *State v. Isaac*, 2d Dist. Montgomery No. 20662, 2005-Ohio-3733, ¶ 8, citing *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994). Accepting those facts as true, the appellate court must then determine as a matter of law, without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied. *Id.*

{¶ 14} The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution guarantee the right to be free from unreasonable searches and seizures. *State v. Orr*, 91 Ohio St.3d 389, 391, 745 N.E.2d 1036 (2001). "The United States Supreme Court has stated that a traffic stop is constitutionally valid if an officer has a reasonable and articulable suspicion that a motorist has committed, is committing, or is about to commit a crime." *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 7, citing *Delaware v. Prouse*, 440 U.S. 648, 663, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). (Other citations omitted.)

{¶ 15} Once a lawful traffic stop has been made, the police may require the driver and

any passengers to exit the vehicle pending completion of the traffic stop. *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977); *Maryland v. Wilson*, 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997); *State v. Evans*, 67 Ohio St.3d 405, 408, 618 N.E.2d 162 (1993). "Where there is a lawful basis for the stop, ordering an occupant out of the car is proper, even if the officers are not prompted by a reasonable, articulable suspicion of criminal activity." *State v. Mobley*, 2d Dist. Montgomery No. 26044, 2014-Ohio-4410, ¶ 13; citing *Evans* at 408.

{¶ 16} Furthermore, "[u]nder the plain-view doctrine, police may seize evidence without a search warrant when (1) the initial intrusion providing the observation was lawful, (2) discovery of the evidence was inadvertent, and (3) the incriminating nature of the evidence was immediately apparent." *State v. Wafer*, 2d Dist. Clark No. 2012-CA-37, 2013-Ohio-2565, ¶ 9, citing *State v. Hunter*, 2d Dist. Montgomery No. 24350, 2011-Ohio-6321, ¶ 31; *State v. Williams*, 55 Ohio St.2d 82, 85, 377 N.E.2d 1013 (1978).

{¶ 17} In this case, there is no video evidence of Wynn's traffic violation; however, Ferguson testified that he observed Wynn fail to signal before changing lanes, and the trial court found his testimony credible. Failure to signal before changing lanes is a violation of R.C. 4511.39, which states that: "No person shall turn a vehicle or trackless trolley or move right or left upon a highway unless and until such person has exercised due care to ascertain that the movement can be made with reasonable safety nor without giving an appropriate signal in the manner hereinafter provided." Because the trial court found Ferguson's testimony regarding the foregoing traffic violation credible, we conclude the traffic stop of Wynn's vehicle was constitutionally valid. *See State v. McEldowney*, 2d Dist. Clark No. 06-CA-138, 2007-Ohio-6690, ¶ 38 ("evidence of a defendant's marked lane violation establishes reasonable

suspicion or probable cause for a traffic stop").

{¶ 18} We note that the traffic stop is valid even though Ferguson was not the officer who completed the stop. "[T]he fact that one officer makes the initial traffic stop based solely on the knowledge of another officer claiming to have witnessed a traffic violation does not support a Fourth Amendment violation." *State v. Brock*, 2d Dist. Montgomery No. 23665, 2010-Ohio-5885, ¶ 15, citing *State v. Cook*, 65 Ohio St.3d 516, 521, 605 N.E.2d 70 (1992). "An officer need not have knowledge of all of the facts necessary to justify an investigative stop, as long as the law enforcement body as a whole possesses such facts and the detaining officer reasonably relies upon those who possess the facts. * * * A radio broadcast may provide the impetus for an investigatory stop, even when the officer making the stop lacks all of the information justifying the stop." (Citation omitted.) *Cook* at 521.

{¶ 19} In addition, we reviewed the video evidence from Phillips's cruiser camera and the only inconsistency we found between the video and Phillips's testimony is that it appears Phillips handcuffed Wynn before observing the heroin. The video depicts Phillips approaching the vehicle, communicating with Wynn through the driver's-side window, lawfully ordering Wynn out of the vehicle, and then handcuffing him. After handcuffing Wynn, Phillips's attention is drawn to the driver's-side door where he found the heroin, and then Phillips proceeds to search Wynn.

{¶ 20} The inconsistency between the video and Phillips's testimony is immaterial because the heroin was not discovered as a result of Wynn being handcuffed. Rather, the heroin was discovered as a result of Phillips stopping Wynn's vehicle, ordering Wynn from the vehicle, and then spotting the heroin in plain view inside the driver's-side door that Wynn left hanging

open. The independent source doctrine allows the admission of evidence that has been discovered by means wholly independent of any constitutional violation. *Nix v. Williams*, 467 U.S. 431, 444, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). Because the heroin in Wynn's vehicle was discovered wholly independent of the handcuffing, it is not necessary to address whether handcuffing Wynn prior to viewing the heroin actually was a constitutional violation, as the handcuffing itself did not result in any suppressible evidence. *See State v. White*, 2d Dist. Montgomery No. 18731, 2002 WL 63294, * 7 (Jan. 18, 2002) (finding the police lacked a lawful basis to handcuff the defendant during a traffic stop, but that the drugs discovered in plain view during the traffic stop should not be suppressed because the drugs were not seized as a result of the handcuffing).

{¶ 21} Instead, we conclude that Phillips lawfully seized the heroin pursuant to the plain view exception to the warrant requirement. The heroin came into plain view as a result of a constitutionally valid traffic stop and Phillips's lawful decision to order Wynn from the vehicle. The heroin was also inadvertently discovered by Phillips during the traffic stop, as there is nothing in the record indicating that Phillips knew there was heroin in the vehicle. Additionally, Phillips testified that he is familiar with the appearance of heroin and immediately recognized the chunky substance in Wynn's vehicle as heroin based on his six years of police training and experience. Accordingly, all requirements under the plain view doctrine are satisfied. *See Brock*, 2d Dist. Montgomery No. 23665, 2010-Ohio-5885 at ¶ 21.

{¶ 22} Moreover, the heroin in Wynn's vehicle would have inevitably been discovered even if it had not been observed in plain view, because Phillips had probable cause to search Wynn's vehicle after he detected a strong odor of burnt marijuana emanating from the vehicle.

*See State v. Moore*, 90 Ohio St.3d 47, 48, 734 N.E.2d 804 (2000) ("the smell of marijuana alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to search a motor vehicle, pursuant to the automobile exception to the warrant requirement").

**{¶ 23}**   We also note that Wynn's implication that the traffic stop was unlawful due to its alleged pretextual nature is without merit.   When the police have probable cause to believe that a traffic violation has occurred, the existence of a pretextual reason for making the stop does not render it contrary to the Fourth Amendment's prohibition against unreasonable searches and seizures.   *Whren v. U.S.*, 517 U.S. 806, 812-813, 116 S.Ct.1769, 135 L.Ed.2d 89 (1996); *Dayton v. Erickson*, 76 Ohio St.3d 3, 11, 665 N.E.2d 1091 (1996); *State v. Desman*, 2d Dist. Montgomery No. 19730, 2003-Ohio-7248, ¶ 17.   Because Ferguson had probable cause to stop Wynn for a traffic violation, the stop remains constitutionally valid even if Ferguson had an ulterior motive for wanting to conduct the stop.

**{¶ 24}**   For the foregoing reasons, we conclude that the trial court did not err in overruling Wynn's motion to suppress and overrule his sole assignment of error.   Having overruled Wynn's sole assignment of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

FAIN, J., and DONOVAN, J., concur.


Copies mailed to:

Mathias H. Heck
Andrew T. French
Daniel J. O'Brien
Hon. Mary L. Wiseman