[Cite as *State v. Hunter*, 2011-Ohio-6321.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO                              :
                                           :      Appellate Case No. 24350
        Plaintiff-Appellee                 :
                                           :      Trial Court Case No. 09-CR-4069/2
v.                                         :
                                           :
STEFOUN D. HUNTER                          :      (Criminal Appeal from
                                           :       Common Pleas Court)
        Defendant-Appellant                :
                                           :

. . . . . . . . . . .

O P I N I O N

Rendered on the 9th day of December, 2011.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by JOHNNA M. SHIA, Atty. Reg. #0067685, Montgomery
County Prosecutor's Office, Appellate Division, Montgomery County Courts Building,
P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

ENRIQUE G. RIVERA-CEREZO, Atty. Reg. #0085053, Post Office Box 734, Dayton,
Ohio 45419
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FAIN, J.

{¶ 1}  Defendant-appellant Stefoun D. Hunter appeals from his three

convictions for Having Weapons Under Disability, a third-degree felony, in violation of

R.C. 2923.13(A)(3); three convictions for Possession of Cocaine, one fourth- and two

fifth-degree felonies, in violation of R.C. 2925.11(A); one conviction for Possession of Heroin, a fifth-degree felony, in violation of R.C. 2925.11(A); and one conviction for Possession of Marijuana, a fifth-degree felony, in violation of R.C. 2925.11(C)(3)(c). The jury also found Hunter guilty of firearm specifications with respect to each drug conviction; the firearm specifications were all merged for sentencing purposes. Hunter was sentenced to four years in prison.

{¶ 2} Hunter contends that the trial court erred when it denied his motion to suppress evidence obtained during the initial search of the residence.

{¶ 3} We conclude that the police officers lawfully entered the residence without a warrant, based upon anonymous 9-1-1 reports that a person was being held captive in the residence, corroborated by the occupants of the residence ignoring the responding police officers' repeated attempts to gain their attention and, after finally answering the door, immediately attempting to close the door.

{¶ 4} But we also conclude that the trial court's finding that weapons found in the home were found in plain view during a lawful search for persons is predicated upon a mistake of fact that we cannot find to have been harmless. The trial court found that the weapons were found under a bed where a victim might have been; in fact, the weapons were found between the bed's box springs and mattress. Accordingly, Hunter's convictions for Having Weapons Under a Disability and his conviction for firearm specifications with respect to his other convictions are Reversed; his convictions for Possession of Cocaine, Heroin, and Marijuana are Affirmed; and this cause is Remanded for re-determination of the suppression motion with respect to the weapons. If the trial court should again deny the motion to

suppress, it may re-enter the judgment of conviction with respect to the weapons offenses.

I

{¶ 5} In early December 2009, a caller reported hearing six gunshots immediately followed by three men running into 5150 Northcutt Place in north Dayton, Ohio. The call was placed to the Montgomery County Sheriff's Office 9-1-1 Dispatch Center. The call was received from a cell phone that was either not activated or out of minutes; consequently, there was no way to trace the call. The caller refused to give a name. The call was received at 6:51 p.m.

{¶ 6} Four minutes later, Deputy Sheriff Walt Steele and his partner, Deputy Sheriff Kyle Biryani, were dispatched and arrived at the scene at 7:00 p.m. Deputy Sheriff Anthony Hutson, Herb Thornton, and Fred Zollers were also dispatched as back-up.

{¶ 7} Deputy Hutson and his reserve partner were the first on the scene. When they arrived, the front door was closed and there was a light on inside the residence. Deputy Hutson positioned his partner at the front door as he went to the rear door because that is where the three men had supposedly run into the residence. Deputy Hutson knocked at the rear door between fifteen and twenty times. Individuals inside the residence, instead of answering the door, responded by turning up the volume on either a television or radio. Deputy Hutson continued to knock on the rear door. Shortly thereafter, Deputy Thornton joined him.

{¶ 8} Then, at 7:11 p.m., another 9-1-1 call from a deactivated or depleted-minutes phone came into the Montgomery County Sheriff's 9-1-1 Dispatch

Center. There was no indication given to the Dispatch Officer that it was the same person who made the initial report. The caller identified himself as "Shawn Parker" and gave a personal cell-phone number, but explained that it was "not in service." Parker stated that he had received a text message from his son that the individuals inside the residence had tried to rob him and that he was being held against his will in a closet upstairs, where he could see the police officers. After this information was relayed to officers at the scene, Deputy Hutson noticed someone looking out a window, rapidly pulling their head back inside the window, and abruptly closing the window. Deputy Hutson continued to knock at the rear door, louder in order to overpower the increased volume of either the television or radio. Meanwhile, Deputy Zollers began to evacuate the surrounding residences.

{¶ 9} At about 7:30 p.m., a man opened the rear door. Deputy Hutson, with his weapon drawn, began to explain why he was knocking; before he could complete his explanation, the man abruptly began to close the door. Deputies Hutson and Thornton forced their way into the apartment. Deputy Thornton began securing the man who answered the door. Deputy Hutson continued into the residence and found six men sitting on a coach and another man in the stairwell. Other deputies also entered the residence and secured both the man in the stairwell and another man from upstairs. No hostages or firearms were found in the initial search, but marijuana and a flak jacket were found in plain view in the residence. During a second search, a sergeant found a shotgun rifle and several hand guns between a mattress and a box spring while searching for the reported captive underneath a bed.

{¶ 10} A search warrant was then obtained, leading to the discovery of

additional evidence.

{¶ 11} Hunter was arrested and charged by indictment with three Possession of Cocaine offenses, one Possession of Heroin offense, one Possession of Marijuana offense, and three Having Weapons Under a Disability offenses. The drug charges all included firearm specifications.

{¶ 12} Hunter moved to suppress the evidence obtained from the residence, contending that it was obtained as the result of an unlawful search and seizure. Following a hearing, his motion was denied.

{¶ 13} Following a jury trial, Hunter was convicted of all charges and specifications, and was sentenced accordingly. From his conviction and sentence, Hunter appeals.

II

{¶ 14} Hunter's sole assignment of error is as follows:

{¶ 15} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT WHEN IT IMPROPERLY DENIED THE DEFENDANT'S MOTION TO SUPPRESS EVIDENCE OBTAINED IN VIOLATION OF THE RIGHTS CONFERRED BY ARTICLE I, SECTION XIV OF THE OHIO CONSTITUTION AND THE FOURTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION."

A – The Warrantless Entry Into the Residence

{¶ 16} Fourth Amendment searches without a warrant are per se unreasonable and illegal in the absence of an exception to the warrant requirement. *Katz v. United States* (1967), 389 U.S. 347, 357, 88 S.Ct. 507, 19 L. Ed.2d 576; *State v. Cosby* (2008), 177 Ohio App.3d 670, 2008-Ohio-3862. The Supreme Court

of Ohio has recognized seven exceptions including the "presence of exigent circumstances." *State v. Price* (1999), 134 Ohio App. 3d 464, 467. An exigent circumstance exists when it is necessary to protect or preserve life, or to prevent loss of evidence, or a danger to officer safety exists. *State v. Sharpe* (2008), 174 Ohio App.3d 498, 2008-Ohio-267. An officer must present a reasonable, articulable basis along with rational inferences generally associated with probable cause in order to qualify for the emergency exception. *State v. White* (2008), 175 Ohio App.3d 302, 2008-Ohio-657; See *State v. Applegate* (1994), 68 Ohio St.3d 348, 350. Absent these exigent circumstances, officers are barred from entering one's home to perform a search. *Payton v. New York* (1980), 445 U.S. 573, 100 S.Ct. 1371, 63 L. Ed.2d 639. "At a suppression hearing, the state bears the burden of proving that a warrantles search or seizure meets Fourth Amendment standards of reasonableness." *Maumee v. Weisner* (1999), 87 Ohio St.3d 295, 297.

{¶ 17} We agree with Hunter that the Dispatch Center received two anonymously made phone calls. These two calls provided separate and distinct information regarding one address and the occupants of the residence. The State's witness at the suppression hearing testified that there was no way to determine whether these two calls were from the same individual.

{¶ 18} A hang-up 9-1-1 call creates a circumstance where a reasonable investigation can be made. *State v. Hodge*, Montgomery App. No. 23694, 2011-Ohio-633. But a police officer does not have probable cause to engage in a search based solely on an anonymous tip. *Burchett*, supra at ¶ 22.

{¶ 19} Of course, merely knocking at a residence door does not violate the

Fourth Amendment after receiving any sort of tip. *State v. Harris* (2003), Montgomery App. No. 19479, 2003-Ohio-2519, ¶ 12. Nor does failure to volunteer that the person knocking is a police officer render that conduct unreasonable or unlawful. *State v. Barber*, Montgomery App. No. 19107, 2002-Ohio-3278, p. 3.

{¶ 20} An anonymous tip cannot support probable cause for a stop without corroboration. *Alabama v. White* (1990), 496 U.S. 325, 329, 110 S.Ct. 2412, 110 L.Ed.2d 301. However, the corroboration must demonstrate the assertion of illegality and not just the identity of the person. *Florida v. J.L.* (2000), 529 U.S. 266, 272, 120 S.Ct. 1375, 146 L.Ed.2d 254. In other words, Deputies Hutson and Thornton needed to base their entry on reasonable and articulable suspicion of the totality of circumstances to corroborate the two anonymous calls. This includes the actions by those inside the residence along with the two anonymous tips. See *State v. Russell* (2004), 2004-Ohio-1700, ¶ 2, ¶ 18 (finding that reasonable suspicion was created based upon an anonymous tip, the police officer's observations of the defendant, and the furtive movements of the front seat passenger after a police order to show his hands); *In Re D.W.* (2001), 141 Ohio App.3d 409 (reversing the denial of a motion to suppress because police officers failed to corroborate an anonymous call reporting that several individuals in a general area at a reasonable time of the day were armed).

{¶ 21} The crucial issue in this appeal is whether, in order to support a warrantless entry into a residence, corroboration is required for an anonymous tip reporting circumstances in which a victim is likely to be in physical peril and, if so, how much corroboration is required.

{¶ 22} The trial court cited *Wayne v. United States*, 318 F.2d 205, 212 (D.C. Cir. 1963), cert. denied, 375 U.S. 860 (1963), an opinion of then-Judge Warren Earl Burger, for the proposition that the need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency. The problem with reliance on this opinion is Judge Burger's admission, at 318 F.2d 209, that in this he is speaking only for himself. One judge dissented, and the other judge concurred on an unrelated basis.

{¶ 23} Similarly, the State relies upon *State v. White*, 175 Ohio App.3d 302, 2008-Ohio-657, for the proposition that probable cause is not needed in an emergency situation, but only a reasonable belief, approaching probable cause, that it is necessary to investigate an emergency threatening life and limb. But like Judge Burger in *Wayne v. United States*, Judge Clair Dickinson in *State v. White* was speaking only for himself as to this proposition. Judge Lynn Slaby, concurring, opined that there was probable cause for entry into a residence in that case. Judge Donna Carr, in a one-sentence concurring opinion, observed that both parties had agreed that there was probable cause (the dispute was about whether there were exigent circumstances), so there was no need to address a lesser standard.

{¶ 24} 3 LaFave Search and Seizure, §6.6(a), at 453, n.12, cites several cases involving anonymous reports implicating a person in peril resulting in a warrantless entry into a residence. *United States v. Holloway*, 290 F.3d 1331, 1338 (11th Cir., 2002) holds that an anonymous tip need not be corroborated for a warrantless search of a residence where the information provided "involved a serious threat to human life." In *State v. Boggess*, 115 Wis. 2d 443, 340 N.W.2d 516

(1983), an anonymous phone call reporting battered children was held to be sufficient for a warrantless entry in a home where the caller had provided details, even though the details were not corroborated (for the most part) at the time of entry.

{¶ 25} On the other hand, in *Kerman v. City of New York*, 261 F.3d 229 (2nd Cir., 2001), an anonymous caller gave the name and telephone number of a man she said was at a given residence, who she said was mentally ill, off his medication, acting crazy, and "possibly" had a gun. The court held that: "Based on the absence of evidence in the record to corroborate the 911 call and the protections afforded to private dwellings under the Fourth Amendment, we find that the officers' warrantless entry into [the plaintiff's] apartment violated the Fourth Amendment." (This was a civil suit against the police and the city by the person whose rights were allegedly violated.)

{¶ 26} These cases involve balancing the compelling interests of the State in the protection of potential victims from death or serious bodily injury, versus the compelling interest of residents in the sanctity of their home. In reaching the conclusion that an uncorroborated anonymous tip that an individual was carrying a firearm was insufficient to justify a stop-and frisk, the Supreme Court noted: "Firearms are dangerous, and extraordinary dangers sometimes justify unusual precautions." *Florida v. J.L.*, supra, 529 U.S. 272. Interestingly, the Supreme Court further noted: "The facts of this case do not require us to speculate about the circumstances under which the danger alleged in an anonymous tip might be so great as to justify a search even without a showing of reliability. We do not say, for example, that a report of a person carrying a bomb need bear the indicia of reliability

we demand for a report of a person carrying a firearm before the police can constitutionally conduct a frisk." Id., 529 U.S. 273-274. This suggests to us that a court needs to weigh the right of persons to be secure from unreasonable searches and seizures (and specifically to enjoy privacy in a residence) against the needs of the police to protect potential victims from death or bodily harm.

{¶ 27} In *State v. Wilson*, Clinton App. No. CA2006-03-008, 2007-Ohio-353, ¶ 29, a broken screen in a fairly dilapidated residence that an experienced police officer took to be evidence of forced entry was deemed to be sufficient corroboration of an anonymous report of a burglary to justify a warrantless entry.

{¶ 28} In *State v. Tucker*, Clark App. No. 2009 CA 82, 2010-Ohio-3920, there was a report of an armed burglary at a trailer at a trailer park. The opinion does not specify whether the report was anonymous. On the arrival of the police on the scene, they noticed that an adjacent trailer had its rear screen and inner doors open. There was no response to their hails. They went in. We upheld the warrantless entry. If this was an anonymous report, there was very little corroboration, but we deemed it sufficient.

{¶ 29} We conclude that when an anonymous tip includes a report that a victim is in physical peril, some corroboration is required to justify a warrantless entry into a residence, but not much corroboration.

{¶ 30} In the case before us, when Deputy Hutson arrived at the residence, he observed the front door locked and lights on. When Deputy Hutson knocked at the rear door, it was actively ignored by the occupants of the residence. After knocking for approximately eleven minutes and stopping to receive the second dispatch call,

Deputy Hutson noticed someone in the window upstairs from his position investigating whether or not he had left and abruptly shut the window upon being noticed. After another fifteen to twenty minutes of knocking, someone opened the door, but immediately began trying to close the door upon realizing that it was a law enforcement officer at the door. Those circumstances supported a reasonable inference that the occupants of the residence were involved in a criminal activity that they did not want a police officer to see or overhear. Therefore, the circumstances provided some corroboration, even if slight, of the information received from the anonymous caller or callers that the occupants had just fired their weapons and had just robbed someone and were holding him captive. That would lead a reasonable police officer to believe that a person was in imminent danger of physical harm, an exigent circumstance justifying a warrantless search of the residence.

B – The Discovery and Seizure of the Firearms

{¶ 31} The Plain View Doctrine is another exception to the requirement for a search warrant. See *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 91 S.C.t 2022, 29 L.Ed.2d 564. The Supreme Court of Ohio has stated that: " * * * , in order to qualify under the plain view exception, it must be shown that (1) the initial intrusion which afforded the authorities the plain view was lawful; (2) the discovery of the evidence was inadvertent; and (3) the incriminating nature of the evidence was immediately apparent." *State v. Williams* (1978), 55 Ohio St.2d 82, 85.

{¶ 32} In the case before us, we have determined in Part II – A, above, that the entry into the residence was lawful. Hunter does not argue that the incriminating

nature of the evidence found under the mattress – three firearms – was not immediately apparent. What we must determine, therefore, is whether the discovery of the weapons was inadvertent.

{¶ 33} The search conducted in this case is known as a "protective sweep," defined by the United States Supreme Court as "a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers and others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." *Maryland v. Buie* (1990), 494 U.S. 325, 327, 110 S.Ct. 1093, 108 L.Ed.2d 276. As we have noted, "There must be articulable facts from which police reasonably suspect that the premises in which defendant is arrested harbors another person or persons who may launch an attack on the officers who are there. " *State v. Young* (2011), 2011-Ohio-4875, ¶ 19, quoting from *State v. Sharpe*, 174 Ohio App.3d 498, 2008-Ohio-267, ¶ 37

{¶ 34} The inadvertency requirement of the Plain View Doctrine, as the Supreme Court of Ohio has stated, is "intended to guard against planned, warrantless seizures." *State v. Halczyszak* (1986), 25 Ohio St.3d 301, 303. In other words, officers are banned from "maneuvering themselves within plain view of the object they want." Id., at 303, quoting from *Coolidge v. New Hampshire,* supra, at 403 U.S. 470, fn. 26.

{¶ 35} A weapon has been ruled in "plain view" when the outline of a hand gun was seen by an officer in the back pocket of a defendant. See *State v. Suber* (1997), 118 Ohio App.3d 771, 780, citing *State v. Kistler* (November 6, 1986), Franklin App. Nos. 86AP-289 and 86AP-301. A weapon has also been ruled in

plain view when, upon entering and searching under exigent circumstances similar to those pertaining in this case, an officer found a weapon partially covered at the foot of a bed. *State v. Wyatt*, Summit App. No. 22070, 2004-Ohio-6546. In *State v. Spradlin*, 187 Ohio App.3d 767, 2010-Ohio-2140, officers found a large bag of marijuana in a bedroom, under a bed, and in a shopping bag. The officers had stated they had been looking for additional occupants of a basement, but after lifting a bed skirt to investigate if anyone was hiding under the bed noticed a shopping bag – with the open end facing directly towards the searching officer – containing several gallon-sized freezer bags of marijuana. In that instance, the defendant claimed the marijuana was found outside the scope of the lawful search. We found no merit in this argument, because the trial court found the officer's version of events more credible than defendants and, according to them, the evidence was found inadvertently.

{¶ 36} In the case before us, the only evidence provided during the suppression hearing regarding the circumstances under which the weapons in question were found was conflicting evidence. The evidence was that the guns were found during a secondary search which looked in closets and under beds for the reported captive victim of a robbery. Deputy Hutson testified that his supervisor informed him that, "when attempting to check under a bed," he had "found a shotgun rifle and a couple pistols between the mattress and the box spring." (Tr. 30). Detective Reed also testified that a sergeant had located "numerous firearms that were located in an upstairs bedroom, located in an area where a person could be hidden." (Tr. 53).

{¶ 37} From this evidence, the trial court found that the firearms were found under the bed in the bedroom, while the police officers were looking under the bed for a possible captive victim:

{¶ 38} "Upstairs, while looking underneath the bed by lifting the mattress and box springs up from the bed frame, an officer observed firearms."

{¶ 39} "Here, Defendant Cooper [a co-defendant – both of their suppression motions were heard and decided jointly] argues that the bed in the residence was so low to the ground that it was unreasonable and impermissible for the police to look under it. [This argument is rejected.] Once the officer lifted the bed, the firearms could be seized pursuant to the plain view doctrine. [Citation omitted.]"

{¶ 40} We conclude that the evidence in the record of the suppression hearing, even when viewed in a light most favorable to the State, is too sparse to support the trial court's finding that the firearms were found under a bed. Detective Reed did testify that firearms were found in an area where a person could be hidden, but it appears that this was by report, not within his personal knowledge, and the conclusion that the firearms were found in an area where a person could be hidden does not affirmatively establish where the firearms were found. The only reasonable conclusion that we can draw from the sparse evidence at the suppression hearing was that the firearms were found between the mattress and the box springs.

{¶ 41} We conclude, therefore, that the trial court erred when it found that the firearms were found under a bed. We cannot determine that this error is harmless. Since we conclude that the trial court should have found, based on the evidence at the suppression hearing, that the weapons were found between the mattress and the

box springs, it remained for the trial court to find whether their discovery in that location was inadvertent.  That conclusion is suggested, but not commanded, by Deputy Hutson's testimony that the firearms were found in that location "when attempting to check under a bed."

{¶ 42} Because we conclude that the trial court committed an error that we cannot determine to have been harmless, in its decision denying the motion to suppress the evidence of the firearms, we will reverse the convictions that depend upon that evidence, and remand this cause for further proceedings on that aspect of the suppression motion.

{¶ 43} Hunter's sole assignment of error is sustained in part, and overruled in part.

III

{¶ 44} Hunter's sole assignment of error having been sustained in part, and overruled in part, his convictions and sentence for Possession of Cocaine, Possession of Heroin, and Possession of Marijuana, without the firearm specifications, are Affirmed; his firearm specifications and his convictions for Having Weapons Under a Disability are Reversed; and this cause is Remanded for further proceedings consistent with this opinion.   Should the trial court, on remand, deny the motion to suppress the evidence of the firearms, it may re-enter a judgment of conviction and sentence on the Having Weapons Under a Disability offenses and the firearm specifications to the drug offenses.

. . . . . . . . . . . .

FROELICH, J., concurs.

DONOVAN, J., concurs in judgment only.


Copies mailed to:

Mathias H. Heck
Johnna M. Shia
Enrique G. Rivera-Cerezo
Hon. Mary L. Wiseman