[Cite as *State v. Burdette*, 2013-Ohio-4395.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 25587 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2012-CR-1554 |
| v. | : | |
| | : | |
| ROBERT L. BURDETTE | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 4th day of October, 2013.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MATTHEW T. CRAWFORD, Atty. Reg. #0089205, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
    Attorneys for Plaintiff-Appellee

ENRIQUE G. RIVERA-CEREZO, Atty. Reg. #0085053, 765 Troy Street, Dayton, Ohio 45404
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

FAIN, P.J.

{¶ 1}   Defendant-appellant Robert L. Burdette appeals from his conviction and sentence for Possession of Cocaine in an amount less than five grams.  Burdette contends that the trial

court erred in overruling his motion to suppress, because the police did not have reasonable, articulable suspicion of criminal activity to justify an investigatory stop and detention.

{¶ 2}    We conclude that the trial court did not err in overruling Burdette's motion to suppress.   Accordingly, the judgment of the trial court is Affirmed.

### I.   Police Officers Stop and Frisk Burdette as he Walks Away from an Apartment that Is About to Be Searched Pursuant to a Warrant

{¶ 3}    The trial court made the following findings of fact (Dkt. 12, p. 1-2):

City of Dayton Narcotics Detective Patrick Bell ("Bell") testified that he was part of a team executing search warrants at suspected drug apartments located at 27 South Jersey Street in Dayton.   There were two warrants for two of the apartments in the four unit building.   Bell testified that he arrived at the scene approximately fifteen minutes prior to the execution of the warrants.   According to him, he observed Defendant Robert L. Burdette ("Defendant") and another male arrive, enter one of the apartments for a minute or so and then come back out. [Bell] testified that the two men then loitered outside the apartment and interacted with the other [sic] milling around.

Just prior to the arrival of the raid team, [Bell] observed Defendant and his companion begin to walk away from the building.   He informed the raid team that Defendant and another individual had been in the area and gave a physical description.   [Bell] testified that he knew Defendant had been detained, but he had no contact with him.

Dayton Vice Crimes Detective Raymond St. Clair ("St. Clair") testified that he was part of the team assigned to execute the search warrants at 27 Jersey Street. According to St. Clair, he was given a physical description of persons who had been outside the apartments prior to the raid. He testified that Defendant and his companion matched the descriptions and he detained them by ordering them to the ground.

Dayton Plain Clothes Detective Ryan Halburnt ("Halburnt") testified that he was also involved in executing the search warrants and had been given a description by Bell of persons who had been outside of the apartment before the raid started. Halburnt testified that he first went into the apartment and when he came back out, Defendant had been detained by St. Clair. Halburnt ordered Defendant off the ground and patted him down for weapons. Halburnt testified that he patted down Defendant for officer safety because the warrants were being executed due to drugs being in the apartment. According to Halburnt, high drug activity is often an indicator that there are weapons in the area. Halburnt testified that he felt what he knew to be crack cocaine in Defendant's back pocket. He then handcuffed Defendant and read him his Miranda rights verbatim from the card provided by the Dayton police department. According to Halburnt, Defendant stated that he understood his right [sic] and agreed to answer questions. Halburnt testified that no coercion was used nor were any promises made to Defendant in exchange for answering questions.

{¶ 4} There is evidence in the record to support these findings.

## II. Course of the Proceedings

{¶ 5}    Burdette was charged by indictment with one count of Possession of Cocaine in an amount less than five grams, in violation of R.C. 2925.11(A), a felony of the fifth degree, and one count of Possession of Heroin in an amount less than one gram, in violation of R.C. 2925.11(A), a felony of the fifth degree.   Burdette moved to suppress all evidence obtained by the police during his detention and pat-down, and any statements he made to the police.   After a hearing, the trial court overruled Burdette's motion to suppress.

{¶ 6}    Thereafter, Burdette pled no contest to one count of Possession of Cocaine in exchange for the dismissal of the remaining count.   The trial court found Burdette guilty of Possession of Cocaine in an amount less than five grams, and sentenced him to a period of community control not to exceed five years.

{¶ 7}    From the judgment of the trial court, Burdette appeals.

### III. The Police Had a Reasonable, Articulable Suspicion of Criminal Activity

{¶ 8}    Burdette's sole assignment of error states:

THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT WHEN IT IMPROPERLY DENIED THE DEFENDANT'S MOTION TO SUPPRESS EVIDENCE OBTAINED IN VIOLATION OF THE RIGHTS CONFERRED BY ARTICLE 1, SECTION 14 OF THE OHIO CONSTITUTION AND FOURTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATE [SIC] CONSTITUTION.

{¶ 9}    In deciding a motion to suppress, "the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses."

*State v. Hopfer*, 112 Ohio App.3d 521, 548, 679 N.E.2d 321 (2d Dist.1996), quoting *State v. Venham*, 96 Ohio App.3d 649, 653, 645 N.E.2d 831 (4th Dist.1994). The court of appeals must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. *State v. Isaac,* 2d Dist. Montgomery No. 20662, 2005-Ohio-3733, ¶ 8, citing *State v. Retherford*, 93 Ohio App.3d 586, 639 N.E.2d 498 (2d Dist.1994). Accepting those facts as true, the appellate court must then determine as a matter of law, without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied. *Id*. We have reviewed the evidence presented at the suppression hearing and conclude that the trial court's findings of fact are supported by competent, credible evidence in the record.

{¶ 10} Burdette's motion to suppress raises search and seizure issues under the Fourth Amendment to the United States Constitution, which guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" Searches and seizures conducted without a warrant are per se unreasonable unless they come within one of the " 'few specifically established and well delineated exceptions.' " *Minnesota v. Dickerson*, 508 U.S. 366, 372, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), quoting *Thompson v. Louisiana*, 469 U.S. 17, 19-20, 105 S.Ct. 409, 83 L.Ed.2d 246 (1984). Evidence is inadmissible if it stems from an unconstitutional search or seizure. *Wong Sun v. United States*, 371 U.S. 471, 484- 85, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

{¶ 11} "An investigative stop, or *Terry* stop, is a common exception to the Fourth Amendment warrant requirement." *State v. Carrocce*, 10th Dist. Franklin No. 06AP-101, 2006-Ohio-6376, ¶ 28, citing *Terry v. Ohio*, 392 U.S. 1, 20-22, 30-31, 88 S.Ct. 1868, 29 L.Ed.2d 889 (1968). An officer may conduct an investigative *Terry* stop on an individual if the officer

has a reasonable suspicion, based upon specific and articulable facts, that criminal behavior has occurred or is imminent.  *Terry* at 20, 21, 30, 31.

{¶ 12}  In *State v. Gonsior*, 117 Ohio App.3d 481, 486, 690 N.E.2d 1293 (2d Dist. 1996), we wrote:

> [J]ustification for a particular seizure must be based upon specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant that intrusion. The facts must be judged against an objective standard:  whether the facts available to the officer at the moment of seizure or search would warrant a person of reasonable caution in the belief that the action taken was appropriate. * * * Whether an investigative stop is reasonable must be determined from the totality of the circumstances that surround it. * * * The totality of the circumstances are "to be viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." (Citations omitted.)

{¶ 13}  The trial court found that there was sufficient evidence presented at the suppression hearing to establish that the police had a reasonable, articulable suspicion of criminal activity, justifying the investigatory stop and detention of Burdette.  The trial court reasoned:

> [Burdette] arrived at an apartment that was known for drug activity and that was the subject of a search warrant.  He entered it briefly and then exited. This is consistent with conducting a drug transaction.  Further, he loitered in the area and was friendly with others who were in and out of the apartments.  Finally, Bell testified that he forwarded a physical description to the raid team, and St.

Clair testified that he was informed of the description and Defendant matched it. Thus, St. Clair did not just arbitrarily stop Defendant.

**{¶ 14}** The testimony of Detective Bell established that he witnessed Burdette go into the apartment suspected of drug activity on a couple of occasions for very short periods. Tr. 9-10. Bell then witnessed Burdette hang around outside of the apartment. Based on Bell's experience, he believed Burdette's actions were typical of drug activity. *Id.* at 8. Moreover, Burdette's actions occurred at an apartment that was about to be raided pursuant to a search warrant. Considering the totality of the circumstances, we conclude that the police had a reasonable, articulable suspicion of criminal activity, justifying an investigatory stop. *Terry*.

**{¶ 15}** Burdette and the State also address in their briefs whether the trial court's decision is supported by the United States Supreme Court's decisions in *Michigan v. Summers*, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981), and *Bailey v. United States*, __ U.S. __, 133 S.Ct. 1031, 185 L.Ed.2d 19 (2013). These decisions address whether the existence of a warrant to search a residence allows the police executing the search warrant to detain and search individuals who are inside the residence, or in close proximity to it. Based on our conclusion that the police had sufficient reasonable, articulable suspicion of criminal activity to conduct a *Terry* stop, we need not address whether the police also had authority to detain Burdette under the *Summers* line of cases.

**{¶ 16}** Burdette's sole assignment of error is overruled.

### IV. Conclusion

**{¶ 17}** Burdette's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

DONOVAN and FROELICH, JJ., concur.


Copies mailed to:

Mathias H. Heck
Matthew T. Crawford
Enrique G. Rivera-Cerezo
Hon. Barbara P. Gorman