[Cite as *State v. Dooley*, 2015-Ohio-343.]

### IN THE COURT OF APPEALS OF OHIO
### SECOND APPELLATE DISTRICT
### CLARK COUNTY

STATE OF OHIO

      Plaintiff-Appellee

v.

MACE D. DOOLEY

      Defendant-Appellant

:

Appellate Case No. 2014-CA-3

Trial Court Case No. 2013-CR-490

(Criminal Appeal from Common Pleas Court)

. . . . . . . . . . .

### O P I N I O N

Rendered on the 30th day of January, 2015.

. . . . . . . . . . .

RYAN A. SAUNDERS, Atty. Reg. No. 0091678, Clark County Assistant Prosecuting Attorney, 50 East Columbia Street, Fourth Floor, Springfield, Ohio 45502
      Attorney for Plaintiff-Appellee

ENRIQUE G. RIVERA-CEREZO, Atty. Reg. No. 0085053, 61 North Dixie Drive, Suite B, Vandalia, Ohio 45377
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1}    Defendant-appellant, Mace D. Dooley, appeals from the decision of the Clark County Court of Common Pleas overruling his motion to suppress heroin and drug paraphernalia that the police discovered in his vehicle.   Dooley contends the initial stop of his vehicle and its subsequent search violated his Fourth Amendment rights against unreasonable searches and seizures.   We disagree, and for the reasons outlined below, the judgment of the trial court will be affirmed.

{¶ 2}    On July 1, 2013, Dooley was indicted for one count of possessing heroin in an amount less than one gram in violation of R.C. 2925.11(A), a felony of the fifth degree. Thereafter, on October 29, 2013, Dooley filed a motion to suppress the heroin and drug paraphernalia discovered in his vehicle claiming the items were obtained as the result of an illegal search and seizure.   A hearing on the motion took place on November 7, 2013.   The only witness who testified at the hearing was Sergeant Rick Brumfield of the Clark County Sheriff's Office.

{¶ 3}    Brumfield initially testified that he is a road patrol supervisor for the Clark County Sheriff's Office and that he has 40 years of experience performing narcotics investigations.   As it relates to this incident, Brumfield testified that on April 25, 2013, he was assisting with an ongoing narcotics investigation at a beach area near Crystal Lakes where there is a house and some slides.   Brumfield referred to this area as "the beach house."   Trans. (Nov. 7, 2013), p. 5.

**{¶ 4}** According to Brumfield, his office had received several complaints three days earlier from a concerned citizen regarding activity at the beach house. Specifically, the concerned citizen reported that a male bicyclist was going from vehicle to vehicle and engaging in activity that appeared to be narcotics trafficking. Brumfield did not speak to the concerned citizen himself, but testified that he was aware the caller was male and that he had identified himself when he called.

**{¶ 5}** Upon first arriving at the scene on April 25, 2013, Brumfield testified that he observed a male on a bicycle approach three separate vehicles that were lined up in the parking lot of the beach house. Brumfield observed the bicyclist go up to the driver's-side window of each vehicle, lean into the vehicles, and communicate with its occupants. Brumfield testified that all three vehicles were there at the same time, but the first two vehicles left after the bicyclist had approached them. Brumfield further testified that he was 50 to 100 yards away and could not specifically see an exchange occurring inside the vehicles. However, Brumfield did testify that in his experience the scenario looked like a hand-to-hand narcotics transaction.

**{¶ 6}** Continuing, Brumfield testified that the third vehicle approached by the bicyclist was a blue pick-up truck. After the blue pick-up truck left the beach house area, Brumfield, who was undercover, followed it and sent a radio request for a uniformed patrol to assist with conducting an investigative stop. Brumfield testified that Deputy Snyder of Bethel Township responded to the request and conducted the traffic stop based on what he observed at the beach house.

**{¶ 7}** After Snyder made the stop, both Brumfield and Snyder approached the blue pick-up truck, which was driven by Dooley. According to Brumfield, Dooley exited his pick-up

truck as they approached and the two officers made contact with him. Brumfield then testified that he and Snyder separated Dooley from the other occupant in his vehicle, which Dooley indicated was his son. Brumfield testified that after his initial contact with Dooley, he had Dooley stand by Snyder's cruiser where he read Dooley his *Miranda* rights. Brumfield then interviewed Dooley and explained why he was pulled over. Thereafter, Brumfield testified that he conducted a pat-down search on Dooley and then placed him in the back of Snyder's cruiser.

{¶ 8}    While Dooley was in the cruiser, Brumfield approached Dooley's vehicle and shined a flashlight through the window. Brumfield testified that from the outside of the vehicle he could see a syringe and spoon lying on the back seat. He further testified that a syringe and spoon are indicative of heroin use and that in his experience, when they are found together, heroin is usually found as well. As a result, Brumfield testified that he entered the vehicle, removed the syringe and spoon, and subsequently found a gel cap inside a cigarette pack that was located next to the syringe and spoon. Brumfield indicated that the gel cap tested positive for heroin.

{¶ 9}    Following Brumfield's testimony, the trial court overruled Dooley's motion to suppress at the hearing and issued a corresponding journal entry. Dooley later pled no contest to possession of heroin as indicted and was sentenced to two years of community control sanctions. After his conviction and sentence, Brumfield appealed from the trial court's decision on his motion to suppress, raising one assignment of error for review.

{¶ 10}   Dooley's sole assignment of error is as follows:

THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT
WHEN IT IMPROPERLY DENIED THE DEFENDANT'S MOTION TO

SUPPRESS EVIDENCE OBTAINED IN VIOLATION OF THE RIGHTS CONFERRED BY ARTICLE 1, SECTION 14 OF THE OHIO CONSTITUTION AND FOURTH AND FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION.

{¶ 11} Under his sole assignment of error, Dooley contends the trial court erred and should have suppressed the heroin and drug paraphernalia found in his vehicle on illegal search and seizure grounds. Specifically, Dooley claims that Brumfield's testimony at the suppression hearing does not sufficiently establish that he had a reasonable suspicion of criminal activity justifying an investigative stop. Dooley also contends that Brumfield's act of shining a flashlight in the window of his vehicle should not constitute a lawful search under the plain view doctrine, but recognizes that this court has previously held otherwise.

{¶ 12} In deciding a motion to suppress, " 'the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses.' " *State v. Hopfer*, 112 Ohio App.3d 521, 548, 679 N.E.2d 321 (2d Dist.1996), quoting *State v. Venham*, 96 Ohio App.3d 649, 653, 645 N.E.2d 831 (4th Dist.1994). "The court of appeals must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record." *State v. Isaac*, 2d Dist. Montgomery No. 20662, 2005-Ohio-3733, ¶ 8, citing *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994). Accepting those facts as true, the appellate court must then determine as a matter of law, without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied. (Citation omitted.) *Id.*

{¶ 13} As noted above, Dooley's motion to suppress raises search and seizure issues

under the Fourth Amendment to the United States Constitution, which guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" Searches and seizures conducted without a warrant are per se unreasonable unless they come within one of the " 'few specifically established and well delineated exceptions.' " *Minnesota v. Dickerson*, 508 U.S. 366, 372, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), quoting *Thompson v. Louisiana*, 469 U.S. 17, 20, 105 S.Ct. 409, 83 L.Ed.2d 246 (1984). Evidence is inadmissible if it stems from an unconstitutional search or seizure. *Wong Sun v. United States*, 371 U.S. 471, 484-85, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

**{¶ 14}** Initially, Dooley contends that he was unlawfully stopped because Brumfield did not have a reasonable suspicion of criminal activity to justify an investigative stop. "An investigative stop, or *Terry* stop, is a common exception to the Fourth Amendment warrant requirement." *State v. Carrocce*, 10th Dist. Franklin No. 06AP-101, 2006-Ohio-6376, ¶ 28, citing *Terry v. Ohio*, 392 U.S. 1, 20-22, 30-31, 88 S.Ct. 1868, 29 L.Ed.2d 889 (1968). Under *Terry*, an officer may conduct an investigative stop on an individual "if the officer has a reasonable suspicion, based upon specific and articulable facts, that criminal behavior has occurred or is imminent." *State v. Burdette,* 2d Dist. Montgomery No. 25587, 2013-Ohio-4395, ¶ 11, citing *Terry* at 20-21, 30-31.

**{¶ 15}** "Whether an investigative stop is reasonable must be determined from the totality of the circumstances that surround it." *State v. Gonsior*, 117 Ohio App.3d 481, 486, 690 N.E.2d 1293 (2d Dist.1996), citing *State v. Freeman*, 64 Ohio St.2d 291, 414 N.E.2d 1044 (1980), paragraph one of the syllabus. To that end, "[t]he facts must be judged against an objective standard: whether the facts available to the officer at the moment of seizure or search would

warrant a person of reasonable caution in the belief that the action taken was appropriate." *Id.*, citing *Terry*. (Other citation omitted.)

{¶ 16} Where the information possessed by police before an investigative stop "stems solely from an informant's tip, the determination of reasonable suspicion will be limited to an examination of the weight and reliability due that tip." *Maumee v. Weisner*, 87 Ohio St.3d 295, 299, 720 N.E.2d 507 (1999). " 'A telephone tip can, by itself, create reasonable suspicion justifying an investigatory stop where the tip has sufficient indicia of reliability.' " *State v. Parson*, 2d Dist. Montgomery No. 25399, 2013-Ohio-2763, ¶ 11, quoting *Weisner* at paragraph two of the syllabus. "The informant's veracity, reliability, and basis of knowledge are highly relevant factors in determining the value of the informant's tip." *Id.*, citing *Weisner* at 299.

{¶ 17} "In assessing the reliability of a tip, courts have generally recognized three categories of informants: (1) the identified citizen informant, (2) the known informant, i.e., someone from the criminal world who has a history of providing reliable tips, and (3) the anonymous informant." *State v. Todd*, 2d Dist. Montgomery No. 23921, 2011-Ohio-1740, ¶ 24, citing *Weisner* at 300. (Other citation omitted.) " 'Ohio courts have generally accorded the identified citizen informant greater credibility.' " *Id.*, quoting *State v. Reed*, 2d Dist. Montgomery No. 23357, 2010-Ohio-299, ¶ 44. " 'Information from an ordinary citizen who has personally observed what appears to be criminal conduct carries with it indicia of reliability, and is therefore presumed to be reliable.' " *Id.*, quoting *Reed* at ¶ 44.

{¶ 18} In this case, at the time Brumfield decided to stop Dooley's vehicle, Brumfield was assisting with an ongoing investigation of the beach house as the result of several complaints called in by an identified citizen informant who reported seeing a male bicyclist in that specific

area going from vehicle to vehicle engaging in activity that appeared to be narcotics trafficking. Three days later, the informant's complaint was corroborated when Brumfield observed a male bicyclist in the beach house parking lot approach three separate vehicles, lean in the driver's-side window of those vehicles, and make contact with the occupants.

{¶ 19} We note that Brumfield testified that he was unable to see an exchange between the bicyclist and the occupants of the vehicles due to his positioning, but he also testified that, in his experience, the conduct looked like a hand-to-hand narcotics transaction. Furthermore, the information provided by the identified citizen informant is presumed reliable and was corroborated by Brumfield's observations. While the conduct observed by Brumfield may be innocuous by itself, when considering the matching complaints made by the identified citizen just three days earlier, the totality of the circumstances establish a reasonable and articulable suspicion of criminal activity justifying an investigative stop. *See State v. Carter*, 2d Dist. Montgomery No. 21145, 2006-Ohio-2823, ¶ 15 ("[w]hile certain factors when viewed separately can appear innocent, taken together they may warrant further investigation"); *see also Carrocce*, 10th Dist. Franklin No. 06AP-101, 2006-Ohio-6376 at ¶ 35 (finding the totality of the circumstances supported a reasonable suspicion of criminal activity where an officer's investigative stop was based on an identified informant's tip that a male in a white van parked in a parking lot was possibly dealing drugs and the officer observed an armored vehicle matching the informant's description parked in a dark, vacant parking lot next to an abandoned building); *see also Todd* at ¶ 25.

{¶ 20} For the foregoing reasons, Dooley's first argument is overruled, as he was subject to a lawful, investigative stop.

{¶ 21} Next, Dooley argues that Brumfield conducted an unlawful search of his vehicle and asks this court to hold that the plain view doctrine is violated by shining a flashlight inside a vehicle. The plain view doctrine is another exception to the search warrant requirement. *State v. Hunter*, 2d Dist. Montgomery No. 24350, 2011-Ohio-6321, ¶ 31, citing *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). "Under the plain-view exception, 'police may seize an article when its incriminating nature is immediately apparent to an officer who comes in contact with the item through lawful activity.' " *State v. Thompson*, 2d Dist. Montgomery No. 25658, 2013-Ohio-4825, ¶ 13, quoting *State v. Pounds*, 2d Dist. Montgomery No. 21257, 2006-Ohio-3040, ¶ 19. (Other citation omitted.) "The police officer need not be absolutely certain that the item seen in plain view is contraband or evidence of a crime. It is sufficient if probable cause exists to associate the item with criminal activity." *Pounds* at ¶ 19, citing *State v. Stiffler*, 2d Dist. Montgomery No. 21008, 2006-Ohio-46, ¶ 15.

{¶ 22} Once an officer sees contraband in plain view inside a vehicle, he or she then has probable cause to believe the vehicle contains other items of contraband and may conduct a warrantless search of the vehicle pursuant to the automobile exception to the search warrant requirement. *Thompson* at ¶ 13, citing *Pounds* at ¶ 21. "Under the automobile exception, police may warrantlessly search a vehicle that they have probable cause to believe contains contraband." *Id.*, citing *State v. Moore*, 90 Ohio St.3d 47, 51, 734 N.E.2d 804 (2000). "The scope of the search extends to anywhere in the vehicle that contraband might be hidden." *Id.*, citing *United States v. Ross*, 456 U.S. 798, 825, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). This includes a closed container if there is probable cause to believe it contains evidence related to the crime under investigation. *State v. Roberts*, 2d Dist. Montgomery No. 21221, 2006-Ohio-3042,

¶ 18, citing *Ross*.

{¶ 23}  Here, Sergeant Brumfield shined a flashlight through the window of Dooley's vehicle and observed in plain view a syringe and a spoon lying on the back seat.  We have previously held that an officer shining his flashlight into a vehicle to illuminate the inside of  the vehicle is not a search that triggers any Fourth Amendment protections, and we will not disturb that holding in this appeal.  *See State v. Reaves*, 2d Dist. Montgomery No. 18302, 2000 WL 1643808, * 3, (Nov. 3, 2000); *State v. Pitts,* 2d Dist. Montgomery No. 18964, 2001 WL 1473789, *2 (Nov. 21, 2001); *State v. Lungs*, 2d Dist. Montgomery No. 22704, 2008-Ohio-4928, ¶ 24. Therefore, the record indicates Brumfield discovered the syringe and spoon through lawful activity.  The record also indicates the incriminating nature of the syringe and spoon was immediately apparent to Brumfield, as he testified that based on his experience, these items are usually discovered with heroin and are indicative of heroin use.  Accordingly, we conclude the syringe and spoon were lawfully seized by Brumfield pursuant to the plain view exception to the warrant requirement.

{¶ 24}  Moreover, as a result of lawfully observing drug paraphernalia in plain view, Brumfield had probable cause to believe Dooley's vehicle contained other contraband and was therefore permitted to search the vehicle under the automobile exception to the  warrant requirement.  Because the presence of the syringe and spoon gave Brumfield probable cause to believe the vehicle contained drugs, he was also permitted to search any container within the vehicle that could potentially contain drugs.  Given that Brumfield testified the cigarette pack was located with the spoon and syringe, it was reasonable for him to believe there might be drugs inside.  Accordingly, the search of the cigarette pack, which was found to contain heroin, was

lawful under the automobile exception.

**{¶ 25}** For the foregoing reasons, Dooley's second argument regarding the search of his vehicle is overruled.

**{¶ 26}** Because the heroin in Dooley's vehicle was seized as the result of a constitutionally sound stop and search, the trial court did not err in denying his motion to suppress. Accordingly, Dooley's sole assignment of error is overruled and the judgment of the trial court is affirmed.

. . . . . . . . . . . .

FROELICH, P.J. and FAIN, J., concur.

Copies mailed to:

Ryan A. Saunders
Enrique G. Rivera-Cereza
Hon. Hon. Richard J. O'Neill